(No. 12810.—Reversed and remanded.)

CHARLES E. SIKES, Appellant, *vs.* THE MOLINE CONSUMERS COMPANY, Appellee.

*Opinion filed April 21, 1920—Rehearing denied June 2, 1920.*

1. WATERS—*riparian proprietors own to the center thread of a stream.* Riparian proprietors who have title by patent from the United States government own to the center thread of the channel whether or not the river is navigable.

2. SAME—*Supreme Court takes judicial notice that Mississippi river is navigable.* The Supreme Court takes judicial notice that the Mississippi river is navigable where it bounds Rock Island county.

3. SAME—*bed of stream may be divided and conveyed as other land.* One person may own the bank, another the shore and an-

other the bed of a stream, or the bed of a stream may be divided and conveyed the same as any other land.

4. PLATS—*meaning of every word, figure and line must be considered in construing a plat.* In construing a plat the same rules of construction must be applied as in construing a deed, and every word, figure and line must be considered, as it is a question of law for the court as to what the plat proves.

5. SAME—*construction of a plat bounded by a river.* Where only a river boundary is shown between platted land and the stream the legal presumption is that the maker of the plat intended to convey to the middle of the stream; but if there are two lines, one showing distinctly the boundary of the plat and another distinct line showing the boundary of the stream, the maker is presumed to reserve to himself the ownership of his land in the stream.

6. TRESPASS—*party who removes sand and gravel from bank of river is liable to action for trespass—damages.* A party who without right removes sand and gravel from the bank or shore of a river may be sued in trespass by the riparian proprietor who owns to the center of the stream, and the plaintiff will be entitled to recover the value of the sand and gravel in its severed condition on the barge, without accounting to the defendant for the pumping of the same.

7. CORPORATIONS—*consolidated corporation is liable for obligations of the corporations of which it is composed.* A corporation which is the result of a consolidation of corporations is liable for the obligations of each corporation joining in the consolidation.

APPEAL from the Circuit Court of Rock Island county; the Hon. WILLIAM T. CHURCH, Judge, presiding.

GEORGE W. WOOD, and P. J. MEERSMAN, for appellant.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This action is trespass *quare clausum fregit* and was begun in the circuit court of Rock Island county by Charles E. Sikes, appellant, against appellee, for forcibly entering his premises, being that part of the northwest quarter of

section 17, town 18, north, range 1, east of the fourth principal meridian, lying west of the west line of River street, in the original town of Hampton, excepting blocks 1 and 2 in said village, in the county of Rock Island, and removing and carrying away therefrom sand and gravel by means of steamboats, barges and sand-pumps. The declaration is in three counts, the first charging a single trespass, and the second a continuing trespass by the Moline Sand Company, subsequently consolidated with the Moline Channel Ice Company and forming the Moline Consumers Company, appellee. The third count charged a continuing trespass committed by the Moline Consumers Company subsequent to the consolidation. Issues were joined on the pleas of the general issue, *liberum tenementum,* Statute of Limitations and denial of consolidation. There was a trial by jury, and at the close of appellant's case the court, on motion, excluded his evidence, refused to admit further evidence offered, peremptorily instructed the jury to find for appellee, and overruled appellant's motion for a new trial and entered a judgment against him.

The evidence proved title in fee in Soranus L. Brettun on the day of his death to the entire quarter section aforesaid by a regular connected chain of title from Joel Thompson and Henry A. McNeal, who obtained the patent to the same from the United States, and that Brettun died testate on April 22, 1881. He devised said quarter section to his widow, Margaret Brettun, for life, who died July 27, 1891. He devised one-third of the remainder in fee to Charles C. Black and another one-third of the remainder to Brettun Crapster for life and at his death the remainder in his one-third to his children. The remaining one-third he devised to Caroline L. Crapster (since married to A. C. Bangs) for life and the remainder to her children, but should she die without leaving issue, one-half of her one-third he devised to Charles C. Black and the other one-half of her one-third to Brettun Crapster during his life and to Brettun Crapster's

children forever.  Brettun Crapster, grandson of the testator, died leaving two daughters, Bretta Crapster and Caroline L. Crapster, now Caroline L. Caton.

To prove title in himself appellant put in evidence a contract dated October 23, 1913, and three quit-claim deeds, dated, respectively, October 23, 1913, May 4, 1915, and March 2, 1916, all of which instruments are recorded.  The lands deeded in said deeds and concerning which the contract was made are the same lands and described in the same manner as those described in the declaration as aforesaid.  The first and third deeds were executed by Charles C. Black and wife; Caroline L. Bangs and husband; Jennie G. Crapster, widow; Bretta Crapster, unmarried; and Caroline L. Caton and husband,—only daughters and heirs of Brettun Crapster, deceased,—to Charles E. Sikes, appellant.  The first deed erroneously recited these words: "The intention hereof being to convey all the grantors' interests in all that part of said northwest quarter which lies between the west line of River street and the low-water mark of the Mississippi river, excepting that part thereof platted as blocks 1 and 2."  The third deed was made to correct the description in the first deed according to the recitals in the third deed, and the correction made is the omission of the words above quoted.  By these two deeds appellant obtained all interests then owned by Charles C. Black and the two children of Brettun Crapster, and also the life interest of Caroline L. Bangs, who has four living children, to-wit, Milton A. Bangs, Ruth Bangs, Phyllis G. Bangs and Madge E. Bangs Gault, all of whom executed the second quit-claim deed to appellant, the husband of Madge E. Bangs Gault also executing the deed.  The interests of her four children are not definitely shown by the proof, for the reason that it does not appear how many, if any, of these four children were in being at the death of the testator or at the date of his will, and it does not appear who were his heirs.  By the contract, which was signed by the same parties who exe-

cuted the first and third deeds and by appellant, the grantors agreed to convey the land described in the declaration to appellant for $300, free from incumbrance. It further provides that appellant shall have the privilege of removing all the sand, gravel and mud from the premises that he shall see fit to remove, and that no buildings of any kind shall be erected on the premises for a period of fifty years. It also binds appellant to cut the trees and brush from the premises within six months and to keep the same cut during the agreement, and to drain the land so that stagnant water shall not stand on it. Appellant's proofs, and the offered proofs which were excluded, established or would have established that immediately after the execution of the contract appellant took possession of the premises so conveyed him, by a tenant, who went upon the wharf known as the Black wharf, at the foot of Oak street, and which is built up of logs, rocks, gravel and sand, and occupied the premises with boats, fish nets and a clam bakery, at all points just west of the west line of blocks 1 and 2, assuming the blocks to be 80 feet in width, and continued to so occupy the premises to the date of the trial, and that appellant has performed fully his part of the agreement. Continuous trespassing by appellee was proved, as charged in the declaration, during the month of July, 1915, by which large quantities of sand were removed from the premises opposite and west of block 2 and between said block and the center of the river channel. Other trespasses by appellee on the premises south of said block and west of River street were proved. Appellant also offered to prove that by such trespassing 10,000 cubic yards of gravel and sand were removed from the premises immediately west of block 2, 5000 cubic yards were so removed immediately south of said block and 1000 cubic yards immediately north of said block and west of River street, assuming that block was 80 feet wide and the street 70 feet wide, and the market value of the sand and gravel so removed when in place in

its bed and its value on appellee's barges when removed, all of which was denied by the court.

For the purpose of identifying the land purchased by him, appellant offered in evidence four plats. The first was a certified copy of the plat of township 18, north, range 1, east of the fourth principal meridian, accompanied by United States field notes made by the government surveyors. The plat shows that a part of the northwest quarter of section 17 of that township borders on the Mississippi river. The river line cuts the northwest quarter of the northwest quarter of that section, and the forty acres which adjoin it on the south, by a line running in a northeasterly and southwesterly direction, thereby making these two forties fractional forties. The river line is marked on this plat by several parallel wavy lines, and the river is marked off to the left of these lines by the word "Miss." The field notes on this line read as follows: "Thence up-stream with meanders of left bank of Mississippi river on the N. W. side of Sec. 17-18 N.-1 E.-4th P. M.; N. 11½ E. 1 chain, field 1 chain to the south; N. 11½ E. 21 chains to Mr. Thompson house landing and wood yard; N. 11½ E. 5.63 chains to corner of frac.° Sec. 8 and 17." The north forty of these two forties is shown to contain 33.33 acres and the south forty 38.96 acres. The two east forties of that quarter section are shown to contain 40 acres each. There is no other marking of the water line on this plat except the wavy lines. There is a tracing of a road on this plat to the east of and parallel with the river line, which is referred to in the field notes as "Road from Rock Island to Galena, N. E." The quarter section is described in the patent to Thompson and McNeal as the northwest fractional quarter of section 17. According to the plat and the survey just indicated, the United States by its patent granted the land in said quarter section with the Mississippi river as its northwestern boundary, and the owners of that title as riparian proprietors acquired title to the land beneath the

water to the center thread of the channel as to all of the quarter bounded by the river. (*Middleton* v. *Pritchard,* 3 Scam. 510; *City of Peoria* v. *Central Nat. Bank,* 224 Ill. 43.) The wavy lines indicating the river boundary aforesaid are the ones commonly used by surveyors and which are usually spoken of as one of the conventional river signs, and the law is, in this case, that the owner of said quarter section owned to the center of the stream as aforesaid. This would be true whether the river is navigable or otherwise, but we take judicial notice in this case that the Mississippi river is navigable. There is no dispute by the parties as to the rights conveyed by the United States, both conceding that the patentee and his successors in title owned riparian rights as aforesaid.

In June, 1838, Soranus L. Brettun had surveyed and platted all of the fractional quarter of section 17 except the east 300 feet and the part thereof that lies west of blocks 1 and 2 and west of River street and east of block 2. This plat was acknowledged by Brettun before a justice of the peace and was recorded in book "B" of deeds in the recorder's office of said county on page 479, and it is known as "Plat of the Town of Hampton." It was recorded by tracing it on tissue paper and pasting the tissue paper on said page. The plat on the paper was much larger than the page of the record, and for that reason the plat was so folded that it was of the size of or less than the page of the record. The evidence discloses that about 1879 the folded part of this plat was torn from the record and disappeared.

Two other plats were introduced,—one known as "Compilation Plat of Hampton" and the other as "Monumental Plat of the Village of Hampton." From these two plats it appears that Brettun's plat of Hampton contained thirty-six blocks. The mutilated remains of the plat of Hampton were put in evidence by the introduction of original deed record "B," page 479, and that part of the indexes of deeds and plats showing that said plat was filed and recorded in

said deed record and at said page. A substantial repro-
duction of what appears from the plat at page 479 is here
shown:

Only blocks 1, 2 and 6 are completely shown in the
above copy for the reasons already given. Blocks 5, 4 and
3 are in the same row as blocks 6 and 7 and are south of
block 6. The next row of blocks east contains blocks 12,

11, 10, 9 and 8, block 8 being immediately east of block 7 and block 9 being east of block 6. Parts of blocks 7, 9 and 10 appear in the above copy, as also does a part of block 5 immediately south of block 6. The number "479" in the lower right-hand corner indicates the page of the record on which the plat was recorded or pasted. The street extending east and west between blocks 1 and 2 and 6 and 7 is Oak street, as shown by the Compilation and Monumental plats introduced. The next street south between blocks 5 and 6 is Center street, in which, on the above copy, appear the letters and figures "S. 75 E.," indicating the bearing of the lines of that street,—south seventy-five degrees east. The monument indicated by the words "Sect. Post," at the northwest corner of the plat, is in the north line of section 17 and is probably the same monument located by the government surveyors. A civil engineer testified that by examination of said plat and by measurement he found that all the lines on the plat except the north line of section 17 and a line running parallel therewith and 30 feet south thereof run parallel with or at right angles to each other and that the lines run at a variation of 75 degrees from the section line; also, that from measurements made on the plat, using the distance marked on the plat as a basis, he ascertained that the plat was drawn to a scale of 209 feet to an inch, and that by using that as a scale, block 2 measured on the plat 80 feet wide and 330 feet long; that the west side of block 7 scaled 424 feet; that Oak street scaled 60 feet wide and River street scaled 70 feet. In other words, his testimony exactly corroborates the above partial plat of Hampton in all particulars so far as those particulars appear on said partial plat. It further appears by the evidence of witnesses who used a magnifying glass, that they could see by their natural eye, and more plainly by the glass, the numbers of the fourteen lots in block 1 plainly written across their face; that in block 2 the lots are numbered in the same way, beginning with 1 and ending with 11; that

at the south end of block 2 appear the figures and letters
"80 ft.;" that at the west side of blocks 1 and 2 there are
straight lines drawn parallel with the east lines of said
blocks, and as shown by the engineer these parallel lines are
80 feet apart.

Appellee questions the accuracy of appellant's contention
that the plat recorded in deed record "B," page 479, and
the evidence in the record, show the number of the lots in
blocks 1 and 2, as aforesaid, with straight lines on the west
side thereof and the letters and figures "80 ft." at the south
end of block 2. The evidence clearly shows that appel-
lant's contention is correct. We have examined the pho-
tographic copy of said plat appearing in the record and in
the abstract and have been able to see clearly with a magni-
fying glass that the plat does make the showing aforesaid.
The above copy of the plat also shows that the east line of
block 2 is extended south clear across the plat, so far as
is above shown, as the west line of River street, and the
figures and letters "70 ft." appearing at the northwest cor-
ner of block 5 clearly indicate that this street was surveyed
to be 70 feet wide. The Monumental plat also shows that
this west line of River street is extended south to the ex-
treme south side of block 4,—a distance of more than
1100 feet south of block 2,—and that River street is 70 feet
wide throughout that distance. It also clearly appears from
an examination of the photographic copy of the original
plat of Hampton, that on that plat the high-water mark of
the Mississippi river is indicated as running across blocks 1
and 2; that the high-water mark cuts block 1 at something
near its center, running almost parallel with its side lines;
that the high-water mark continues south across block 2,
cutting the north line thereof near the center and the south
line thereof a little west of the east line of block 2, and
that it continues on south, crossing the west line of River
street about 40 feet south of block 2, and then running
still south almost on a line with the west line aforesaid of

River street. Low-water mark is also indicated on that
plat, and it is entirely west of blocks 1 and 2 and also en-
tirely west of the west line of River street. At the north
end of block 1 it appears to be 50 or 60 feet west of the
west line of that block.

In this State one person may own the bank, another
the shore and another the bed of a stream, or the bed of a
stream may be divided and conveyed the same as any other
land. (*Rockwell* v. *Baldwin,* 53 Ill. 19.) According to
the proof in this record, Soranus L. Brettun owned at his
death the entire fractional northwest quarter of section 17
aforesaid, which includes all of the town of Hampton and
all west of the town of Hampton to the center of the Mis-
sissippi river. If there is any possible exception to this
statement it must be with reference only to lot 1 in block 2
of said town. There is positively no testimony in this rec-
ord that anyone else owned at that time any lot in blocks 1
and 2 aforesaid, except the testimony of G. F. McNabney,
who testified, in substance, that he was born in the build-
ing on lot 1 in block 2, in the village of Hampton, in 1855,
and that he owned that lot in 1897. It is too clear for argu-
ment, under this evidence, that appellant's grantors named
in the quit-claim deeds became the owners of the northwest
quarter of section 17, except lot 1 in block 2, after the death
of Soranus L. Brettun. While it does not definitely appear
that they had the complete title in fee of said premises, it
does appear that they owned substantially all of the title
and that they conveyed their interests by the quit-claim
deeds to appellant. The recitals in those quit-claim deeds
and in the contract as above set out show as clearly as in-
struments can show that they intended to convey all of frac-
tional section 17 that lies west of blocks 1 and 2 and west
of River street and south of the south line of block 2, and
that blocks 1 and 2 are 80 feet wide and River street only
70 feet wide, when considered with the oral evidence in the
case. The recital in the first quit-claim deed that the inten-

tion thereof is to convey all the grantors' interests in all of that quarter section which lies between the west line of River street and the low-water mark of the Mississippi river, "excepting that part thereof platted as blocks 1 and 2," can have no other meaning than that the west line of blocks 1 and 2 and the west line of River street as marked on said plat are the lines referred to in this deed. Besides, the oral evidence shows that the timber cleared by appellant under his contract was just west of blocks 1 and 2 and east of the center line of the Mississippi river. His contract expressly gave him the privilege of removing all sand, gravel and mud from said premises that he should see fit to remove. The error corrected in the first deed by the second deed evidently shows that the grantors supposed that they owned only to low-water mark, and they apparently willingly corrected the deed so as to convey all their rights west of the lines already indicated. We must construe the contract and the deeds, in connection with the other proof, as conveying to appellant all land west of the platted lines and up to the center of the stream, and that they put appellant into actual possession of the same.

Appellee has argued this case as if the proof showed other parties as owners and in possession of all the lots in blocks 1 and 2. We must construe the facts according to the proofs, and according to those proofs the facts are against that contention. If the further proofs should establish that there are other parties owning and possessing the lots in blocks 1 and 2, in the absence of proof that would estop the grantors of appellant from claiming that they owned land west of the platted lines of the village of Hampton, our holding would still be that the plat of Hampton extends no further west than the platted line of blocks 1 and 2 and the platted line on the west side of River street. In construing that plat the same rules of construction must be applied as if we were construing a deed, and what the plat proves is a question of law for the court. (*Miller* v.

*City of Indianapolis,* 123 Ind. 196.) The meaning of every word, figure and line must be considered in determining the meaning of that plat. This court has recognized the rule that where only a river boundary is shown between a plat and a stream the legal presumption must be that the platter or grantor intended to convey to the middle of the stream; but if there are two lines, one line showing distinctly the boundary of the plat and another distinct line showing the boundary of the stream, in such case the platter is presumed to reserve to himself the ownership of his land in the stream. (*Piper* v. *Connelly,* 108 Ill. 646.) It will be observed that the photographic plat of the town of Hampton shows clearly and distinctly the river line, on which is marked and widely separated the high-water line and the low-water line of the Mississippi river. The platted lines at the west side of blocks 1 and 2 and of River street do not correspond with the river line or the high-water or low-water line indicated or with a line parallel to either but are distinct and different lines. The plat shows distinctly that the actual and full width of said blocks is 80 feet, by the platted lines and also by the figures south of block 2. It is also shown by the plat that the full width of River street in its entire length is 70 feet by the figures appearing in the platted street and by a straight boundary line on the west side of the street. Taking everything into consideration that is shown by the plat, there is no more reason for saying that the straight lines marked on the west side of blocks 1 and 2 do not mark the actual boundaries of those blocks, than for saying that the straight lines marked on the east side and the north and south ends do not mark boundaries of those blocks when we apply the above rule of construction. The same is true as to the west boundary of River street. This construction is also in accordance with the holdings of other courts. *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327; *Polson* v. *City of Aberdeen,* 44 Wash. 155.

Appellant was in possession of the land described in the declaration under a contract of purchase guaranteeing him the right to take sand, gravel and mud therefrom and under deeds conveying him title, and he has a right of action for trespass upon the property by appellee and is entitled to recover full damages under the evidence and the other proofs offered. (*Smith* v. *Price*, 42 Ill. 399; *Illinois and St. Louis Railroad Co.* v. *Cobb*, 94 id. 55.) The proof also shows that he sold sand on the premises and directed the parties where to pump it, and sold sand to appellee and directed it where to pump it, and that appellee paid him for the sand before the trespasses in question. Appellee, being the result of a consolidation of corporations, is liable for the obligations of each corporation joining in the consolidation. (*Franklin Life Ins. Co.* v. *Hickson*, 197 Ill. 117; *Chicago, Santa Fe and California Railway Co.* v. *Ashling*, 160 id. 373.) The proofs and offered proofs clearly show the consolidation of the corporations as charged in the declaration. Appellant is entitled to recover the value of the sand and gravel in its severed condition on the barge, and appellee is not entitled to any allowance for the pumping. (*Donovan* v. *Consolidated Coal Co.* 187 Ill. 28; *Illinois and St. Louis Railroad Co.* v. *Ogle*, 92 id. 353; *Robertson* v. *Jones*, 71 id. 405.) These holdings are predicated upon the evidence introduced and offered by appellee as shown by this record, which simply indicate that we hold that the trial court misconstrued the plat in question and the appellant's rights under such proofs and offered proofs and erred in rejecting the offered proofs and directing a verdict. We are, of course, not indicating what the rights of the parties may be under another trial, where the evidence may present an entirely different case.

The judgment of the circuit court is reversed and the cause is remanded.          *Reversed and remanded.*