CONSOLIDATED COMPANIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

IBERVILLE WHOLESALE GROCERY CO., LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 14079, 14080. Promulgated February 28, 1929.

*G. S. Ruhl, C. P. A.*, for the petitioners.
*F. R. Shearer, Esq.*, for the respondent.

646

OPINION.

TRAMMELL: In Docket No. 14080, the original petition was filed on April 23, 1926, in the name of Iberville Wholesale Grocery Co., Ltd., as petitioner. It is alleged in paragraph 1 of this pleading that "The taxpayer was a Louisiana corporation with principal office at Plaquemine, Louisiana." The petition was verified by an affidavit reading in part as follows:

Before me, the undersigned authority, personally came and appeared V. J. Kurzweg, who being duly sworn, deposes and says that he is Secretary and Treasurer of the Consolidated Companies, Inc., and was Secretary and Treasurer of the Iberville Wholesale Grocery Company which was merged into the said Consolidated Companies; * * *.

On March 1, 1927, an amended petition was filed in the name of the "Iberville Wholesale Grocery Company, Ltd., Petitioner," in which it is alleged that the petitioner "was" a Louisiana corporation, and said amended petition was verified by affidavit reading in part as follows:

V. J. Kurzweg, being duly sworn says that he is the liquidator and was formerly Secretary and Treasurer of the Iberville Wholesale Grocery Company, Ltd., the petitioner herein; * * *.

The Iberville Wholesale Grocery Co., Ltd., ceased to do business on or about July 1, 1918, when it transferred its business and assets to the successor corporation, Consolidated· Companies, Inc. Some time thereafter and prior to October 4, 1927, the charter of the said corporation was canceled, and the corporation thereby dissolved. V. J. Kurzweg, the secretary and treasurer of the corporation, and who was acting as its general manager, testified by deposition signed and sworn to on October 4, 1927, as follows:

Q. Exhibit "D," which is the original charter of the Iberville Wholesale Grocery Company, has never been cancelled, has it Mr. Kurzweg?
A. I think it has.
Q. Do you know when?
A. Recently, within the last year.
Q. Since the organization of the Consolidated Companies?
A. Yes, sir.

In *Oklahoma Natural Gas Co.* v. *Oklahoma*, 273 U. S. 257, Mr. Chief Justice Taft, speaking for the court, said:

It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution can not be distinguished from the death of a natural person in its effect (citing authorities). It follows therefore that, as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law, abates all litigation in which the corporation is appearing either as plaintiff or defendant. To allow actions to continue would be to continue the existence of the corporation *pro hac vice*. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes, it is necessary that there should be some statutory authority for the prolongation.

In the recent case of *S. Hirsch Distilling Co.*, 14 B. T. A. 1073, we held that a petition filed for and on behalf of a wholly dissolved corporation does not give this Board jurisdiction. See also *Sanborn Brothers, Successors, etc.*, 14 B. T. A. 1059. In the latter case, a California corporation had forfeited its charter in 1917, and under the California law its affairs thereafter were in the hands of the former directors as trustees. The Commissioner determined a deficiency against the corporation, and the former stockholders, by one

of their number, filed a petition with the Board. We held that since the stockholders were not the person against whom the deficiency had been determined and had no authority to represent such person, the Board was without jurisdiction.

In the instant case it appears that the corporation in whose name the original and amended petitions were filed has heretofore been dissolved by cancellation of its charter. The exact date of the dissolution is not disclosed. Whether the dissolution occurred prior or subsequent to the filing of the petitions, the Board is now without jurisdiction, under the above cited decisions, to redetermine the deficiency asserted by the respondent against the corporation, unless there is authority under the Louisiana statutes for the prolongation of the life of the corporation for litigating purposes, and unless it further appears that this proceeding has been brought in accordance with such statutory authority.

Act 267 of 1914, appearing in the " Constitution and Statutes—Louisiana—Soloman Wolff, 1920," vol. 1, p. 305, under section 30, provides as follows:

\* \* \* \* \* \* \*

All corporations, whether they expire by limitation or are otherwise dissolved, shall be continued as bodies corporate for the purpose of prosecuting and defending suits by or against them, and of enabling them to liquidate their affairs, to dispose of and convey their property and to divide their capital, but not for the purpose of continuing the business for which they were established.

(a) Upon the dissolution in any manner of any corporation the stockholders shall elect from among their number one or more liquidators \* \* \*.

(b) The liquidators shall have authority to sue for and recover debts and property in the name of the corporation, and may be sued by the same name, and citation may be served upon any one of them, and they shall be liable in *solido* to any creditor or stockholder for the moneys and property of the corporation which shall come to their hands or possession as such liquidators, and for the proper application and distribution thereof.

(c) Where any corporation shall be dissolved in any manner whatever, any court of competent jurisdiction may, at any time, on application of any creditor, or stockholder, and for good reason shown, order that the liquidators so appointed by the stockholders, shall qualify as judicial liquidators, and liquidate the affairs of said corporation under the orders and decrees of the court, \* \* \*.

While it thus appears that under the Louisiana statutes a dissolved corporation is continued as a body corporate for certain purposes, including that of prosecuting and defending suits, there is no provision for such action except by or through the liquidators appointed in accordance with the terms of the statute.

In an action brought in a court of limited jurisdiction, it is generally the rule that all facts necessary to show the jurisdiction of the court must be pleaded and proved. 31 Cyc. 57–104. The jurisdiction of this Board is prescribed and limited by statute, and all essential jurisdictional facts must therefore affirmatively appear.

The Revenue Act of 1926 provides, in section 274, that if in the case of any taxpayer the Commissioner determines that there is a deficiency, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail, and within 60 days after such notice is mailed the taxpayer may file a petition with the Board of Tax Appeals for a redetermination of the deficiency, and the Board shall have jurisdiction to redetermine the correct amount of the deficiency.

From these provisions it is clear, we think, that the jurisdiction of the Board depends directly upon the filing of the petition for redetermination by the taxpayer against whom the Commissioner has determined the deficiency. Unless the petition is filed by such taxpayer, or by some person lawfully authorized to act in behalf of the taxpayer, the Board is without jurisdiction. In *Sanborn Brothers, Successors, etc., supra,* we said:

Since, therefore, the petitioner here is not proceeding for a redetermination of a deficiency against him, and since the taxpayer against whom a deficiency has been determined has not filed the petition, there is nothing within the statutory jurisdiction of the Board, and, for that reason, the proceeding will be dismissed.

In the absence of proper pleading and proof of the essential facts, the Board is without means to determine whether or not it has jurisdiction in the premises. It is primarily to meet this situation that our rules of practice prescribe, in Rule 5 (b), that a proceeding shall be instituted by filing with the Board a petition, which shall contain, among other things, " Proper allegations showing jurisdiction in the Board."

In the case at bar, the foregoing rule has not been complied with. It is not alleged nor proved that the petitioner is a presently existing corporation, nor that a once existant corporation had been dissolved and that the person who filed the petition in its name is the duly appointed, qualified and acting liquidator, or is otherwise authorized to act for such corporation.

There is some evidence in the record that Kurzweg, who verified the petitions, was appointed by the directors of the so-called Old Iberville Wholesale Grocery Co. in July, 1916, to act as liquidator in collecting its accounts receivable and distributing the proceeds among its stockholders. However, that action can not in any sense be said to confer authority or color of authority on him to file the petition in this proceeding, for the reason that he was not appointed by the stockholders to act as liquidator upon final dissolution of the corporation subsequent to 1918, as provided in the statute. He was appointed by the directors, and not the stockholders, long prior to dissolution of the corporation, and at a time when the appointment of a liquidator was not authorized by law. Furthermore, his authority was confined to liquidating the affairs of the corporation

as they existed at July 1, 1916, and the collection and distribution of certain assets owned by the corporation at that date.

Since we are unable to say from the record before us that we have jurisdiction to redetermine the deficiency asserted by the respondent against the Iberville Wholesale Grocery Co., Ltd., the proceedings under Docket No. 14080 will be dismissed.

In the petition filed by the Consolidated Companies, Inc., under Docket No. 14079, it is alleged that the respondent erred in disallowing " a deduction for expense of operating a moving picture theatre in 1918 (viz. Liberty Theatre), $7,197.51 and for the year 1919 of $4,198.58." The proceeding was dismissed in so far as it involved the year 1919, for the reason that no deficiency was determined by the respondent for that year. The petitioner thereafter moved at the hearing for permission to amend its petition by alleging that it was entitled to deduct from its income for 1918, the additional amount of $4,198.58 originally claimed as a deduction from 1919 income. The issue, then, is whether the petitioner has shown itself entitled to a deduction from income for 1918 in the total amount of $11,396.09 on account of the expense of operating the moving picture theatre.

The Liberty Theatre was not at any time operated by the petitioner corporation, but was operated by a separate corporation organized for that purpose, under the circumstances set out in our findings of fact hereinabove. Hence, the petitioner is not entitled to deduct the amount claimed as an expense of operating the theatre. If said amount, or any part thereof, is deductible, it can be allowed only as a debt ascertained to be worthless and charged off in 1918, or as a loss sustained in that year.

The petitioner's tax return for 1918 shows, under the heading "Accounts Charged Off," two items designated " Liberty Theatre loss," in the total amount of $7,197.51. There is also evidence that the amount of $4,198.58 was charged off to the same account in 1919. There is no proof, however, that any part of the account was ascertained to be worthless in 1918, or was in fact worthless. Nor is there any evidence that these amounts represent " losses " sustained in 1918.

The evidence offered by the petitioner on this point is very indefinite and unsatisfactory, but it is shown that the negotiations which resulted in abandonment of the theatre operation were concluded some time in December, 1918, and that the affairs of the theatre corporation could not have been liquidated and its assets distributed among its creditors and stockholders until some time in 1919. In this state of the record the action of the respondent in disallowing the deductions for 1918 is approved.

This petitioner also asserts that the respondent erred in denying its application " for relief and assessment " under sections 327 and 328

of the Revenue Act of 1918, for the six-month period ended December 31, 1918, for the reason that the petitioner suffered an undue hardship due primarily to the following alleged abnormal conditions: (1) low salaries of officers, (2) large amount of borrowed money, (3) good will not reflected in invested capital, and (4) individual efforts of stockholders without compensation.

The Revenue Act of 1918 provides as follows:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328:

*     *     *     *     *     *     *

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to representative corporations specified in section 328. *    *    *

The evidence adduced by the petitioner in support of its contentions under this issue discloses that for the six-month period ended December 31, 1918, it paid the following salaries to its officers: president, $1,950; vice president, $2,850; secretary and treasurer, $3,520. The president acted as credit man and devoted approximately one-half of his time to the business. The vice president was a branch manager and devoted his entire time to the business. The secretary and treasurer acted as general manager and devoted his entire time to the business. No proof was offered as to what would have constituted reasonable compensation for the services rendered, or to what extent the low salaries may properly be regarded as an abnormality affecting income, if any.

The second ground alleged as an abnormality is "large amount of borrowed money." At the end of 1918, the petitioner had borrowed money in the amount of $233,813.44, and at that time it had capital stock outstanding in the amount of $613,700. It is not shown that the borrowed money was used in the operation of the business, nor to what extent, if any, the use of borrowed money contributed to the production of the taxable income.

In any event, the mere fact that the petitioner borrowed that amount of money is not shown to have been out of the ordinary or unusual in that line of business.

It is next alleged that the fact that the value of good will was not reflected in invested capital constituted an abnormality which entitles petitioner to special assessment of its profits tax. The record discloses that the petitioner acquired, without cost to itself, whatever good will its predecessor corporation possessed at July 1, 1918, but there are no facts from which we can approximate the value of the good will, or the extent to which it contributed to the production of income, if any.

The remaining ground urged by the petitioner for special assessment is the fact that certain stockholders rendered services to the corporation without compensation. It appears that, upon organization of the corporation in 1918, a considerable amount of its stock was sold to merchants in its trade territory primarily for the purpose of securing new business. Some of these stockholders thereafter also acted in an advisory capacity to the officers and directors of the corporation in regard to the extension of credit, collection of accounts, and other matters. Service was rendered by a particular stockholder only at irregular intervals as matters would arise with which he was familiar. It is further indicated that the character of the services generally was such as might have been rendered without compensation by any person friendly to the corporation, whether or not he was a stockholder.

Upon consideration of the evidence submitted, we are unable to conclude that any abnormal condition affecting the capital or income of the corporation within the meaning of section 327 (d) of the Revenue Act of 1918, existed in that year. Accordingly, the action of the respondent in denying special assessment is approved.

Reviewed by the Board.

In the proceeding under Docket No. 14079 judgment will be entered for the respondent. The proceeding under Docket No. 14080 will be dismissed for lack of jurisdiction.

STERNHAGEN, VAN FOSSAN, and MURDOCK concur in the result.

SMITH, TRUSSELL, PHILLIPS, and ARUNDELL dissent on the question of jurisdiction.