**TRAHERN PUMP CO. et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 5107.**

Circuit Court of Appeals, Seventh Circuit.

June 23, 1934.

John Early and B. B. Early, both of Rockford, Ill., and Chas. O. Rundall, of Chicago, Ill., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Robert N. Anderson, Sp. Assts. to Atty. Gen., for respondent.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

Petitioner seeks review of the judgment of the Board of Tax Appeals which it rendered upon its review of respondent's redetermination of petitioner's consolidated tax return made for its fiscal year beginning September 1, 1918. The return was for four Illinois corporations—Eclipse Gas Stove Company, American Foundry Company, Rockford Vitreous Enamel Manufacturing Company, and Trahern Pump Company—having outstanding capital of 250, 300, 230, and 1,-200 shares respectively, each of par value of $100. The Commissioner concluded that the pump company was not affiliated with the others for the period in question, which determination the Board of Tax Appeals sustained. 27 B. T. A. 363.

It is evident that the stock holdings in the respective corporations were not of themselves such as would have entitled the corporations to make a consolidated return; but it is contended that such was the understanding and agreement of the corporations, and that the manner of conduct of their business during the period was such that they were in fact entitled to be treated as though they had actually been consolidated and therefore entitled to make the consolidated return.

There is no dispute as to the facts. The corporations had very considerable common stock holdings, and were quite closely related in their business operations. They were engaged in the manufacture and sale of various parts of gas stoves, save that the pump company alone was additionally engaged in the manufacture of pumps. The companies had long been entirely separate entities, each carrying on its own particular business. Before the commencement of the fiscal year in question the companies agreed that they would consolidate, and, upon the beginning of the fiscal year, and thereafter, they operated under a single management, and conducted their businesses from the same headquarters. They agreed that the shareholders should deposit their stock in escrow with a trustee and that a legal consolidation should in fact be effected through the organization of a new company wherein the shareholders of the various companies should have stock in proportion to the book value of their several holdings in the several companies. During the following

March and April substantially all of the stock was so deposited with the trustee. But, pending the organization of the new company and the consummation of the consolidation, the business was carried on in the names of the different companies, and their accounts were separately kept, there being then no newly organized corporation competent to carry on the business of the several entities.

It appears that there was pending in the Illinois Legislature then in session a bill for a revision of the Illinois corporation laws, and that these corporations were advised it would be well to defer the actual consolidation until the new law, if passed, became effective. The new law did pass, and went into effect July 1, 1919. Thereafter suitable resolutions for the consolidation were prepared and adopted by the several corporations, and the requisite certificates for consolidation were sent to the Illinois Secretary of State, who, on August 18, 1919, duly issued the certificate of consolidation, and the consolidation of the corporations was in fact thenceforth in effect; whereupon a new corporation was organized, the stock of which was exchanged for the stock of the prior entities.

The statute which is authority for consolidated tax returns provides:

"(a) That corporations which are affiliated within the meaning of this section shall * * * make a consolidated return of net income and invested capital * * *

"(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests." Revenue Act of 1918, § 240, 40 Stat. 1081.

It is petitioner's contention that these facts indicate a substantial consolidation from the beginning of the fiscal year, wherefore a consolidated return was permissible.

The case of Handy & Harman v. Burnet, 284 U. S. 136, 52 S. Ct. 51, 53, 76 L. Ed. 207, seems quite controlling in a case like this one. The court there said:

"It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business or other considerations having no binding force is not sufficient to satisfy the statute."

Surely at the beginning of the fiscal year there was no such binding contract as would have given the then unformed new corporation right or title to the capital stock which, after it came into existence, might be eventually transferred unto it. The time for such transfer might never have arrived; the yet unadopted law of Illinois might have been such as to prevent such consolidation or to render its consummation too burdensome to be carried out; many or all of the shareholders might have refused to deposit their stock for transfer—indeed, it appears that twenty shares of the stock had not been deposited at the time of deposit of the other stock, and it does not appear when in fact it was deposited. In Peytona Lumber Co. v. Commissioner, 55 F.(2d) 27, 28, 85 A. L. R. 148 (C. C. A. 4), a consolidated return was predicated upon an agreement whereby one corporation might buy the outstanding stock of another corporation, and the court said:

"Until this option was exercised, they had no control of the Hewitt stock enforceable at law or otherwise. Their agreement gave them the right to control the operation of the corporation, not the right to control its stock which they did not own. Until the right to purchase was exercised, it could not be said, to use the language of Mr. Justice Butler in the case cited, that 'the same interests' were 'the beneficial owners in like proportions of substantially all of the stock of each of such corporations.'"

Petitioner cites with apparent confidence Flannery & Co. v. Commissioner, 42 F.(2d) 11, where the Circuit Court of Appeals of the Third Circuit held the several corporations involved constituted a business unit although some of the stock in each of them was outstanding in various persons who were not stockholders common to all of them. But the Supreme Court, without opinion (286 U. S. 524, 52 S. Ct. 497, 76 L. Ed. 1268), reversed the holding of the Court of Appeals on the authority of Handy & Harman v. Burnet, supra.

We are satisfied, under this record, that neither at the beginning of the fiscal year nor at any definite time prior to the actual consolidation of the companies on August 18, 1919, was there a consolidation in fact or in essence, and that thus the judgment of the Board of Tax Appeals must be, and it is, affirmed.