BRANNON'S OF SHAWNEE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10546–75    Filed November 6, 1978.

*Tom G. Parrott, T. Ray Phillips III, Donald C. Gaston,* and *Donald B. Nevard,* for the petitioner.

*James D. Thomas,* for the respondent.

DAWSON, *Judge:* This matter is before the Court on petitioner's motion filed pursuant to Rule 162, Tax Court Rules of Practice and Procedure, to vacate the decision entered in this case on December 22, 1976. Petitioner was previously granted special leave to file its motion to vacate at 69 T.C. 999 (1978). At issue is whether the Tax Court lacked jurisdiction of this case because the petition was filed and decision stipulated by a corporate petitioner which had merged into another corporation 3 years earlier.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

During the taxable years ended August 31, 1967, through August 31, 1971, inclusive, Brannon's of Shawnee, Inc. (hereinafter the petitioner), was an Oklahoma corporation with its principal place of business located at Shawnee, Okla. Petitioner filed United States Corporation Income Tax Returns for the taxable years ended August 31, 1967, August 31, 1968, August 31, 1970, and August 31, 1971, on January 26, 1968, January 20, 1969, May 19, 1971, and April 6, 1972, respectively.

Petitioner was a closely held family business engaged in grocery and food operations. The directors of petitioner were W. R. Brannon, Wanda Brannon, his wife, and Don R. Brannon. W. R. Brannon was elected president of the petitioner at the time of its formation on September 28, 1964, and has been the only person to serve as president. Subsequent to July 14, 1971, the sole shareholder of petitioner was W. R. Brannon.

In April 1972, the Internal Revenue Service, Oklahoma District, began field audit procedures for the tax years ended August 31, 1967, 1968, 1970, and 1971. Shortly thereafter, on September 25, 1972, the petitioner merged into Brannon's No. 7 (hereinafter the successor). The successor, organized in January 1969, was also a closely held family corporation. The directors of the successor were W. R. Brannon, Wanda Brannon, his wife, and Don R. Brannon. W. R. Brannon has been the president of the successor corporation since its formation.

Petitioner did not notify the Office of the District Director for the District of Oklahoma of the merger nor did that office become aware of the merger until late 1975. Petitioner's corporate income tax return for the taxable year ended August 31, 1972, while marked "Final Return" and containing all relevent merger documents, was not requisitioned or transmitted to the Office of the District Director for the District of Oklahoma until December 11, 1975. The petitioner, however, through its president, W. R. Brannon, and Donald Criswell, a C.P.A. who was given a power of attorney by W. R. Brannon to represent the petitioner, continued to actively negotiate with the Internal Revenue Service. On May 17, 1973, the District Director mailed the petitioner a 30-day letter, together with an examination report prepared by Revenue Agent Dale Billy. On January 15, 1974, petitioner filed a protest, signed by W. R. Brannon, against the examination report. During this period consents fixing period of limitation upon assessment of income tax were signed by "W. R. Brannon, President" and were transmitted to the District Director of Internal Revenue at Oklahoma City, Okla. The last consent, filed on January 17, 1975, extended the period of assessment for all tax years in controversy to December 31, 1975. On September 10, 1975, respondent mailed a notice of deficiency to petitioner. Petitioner, by its attorneys Kornfeld, McMillin, Phillips & Upp, filed a petition with this Court on December 10, 1975. The counsel representing petitioner in the instant case had also represented the successor corporation since its formation. The petitioner first raised the issue of capacity in its reply to the answer filed in this case. Nonetheless, pursuant to an agreement between the parties, a decision was entered on December 22, 1976, in the amounts originally determined by the respondent, as follows:

That there are deficiencies in income taxes due from the petitioner for the

taxable years ended August 31, 1967; August 31, 1968; August 31, 1970; and August 31, 1971, in the amounts of $12,327.18; $8,298.39; $2,510.51 and $19,870.41, respectively.

## OPINION

The Tax Court is a court of limited statutory jurisdiction. *Wheeler's Peachtree Pharmacy, Inc. v. Commissioner*, 35 T.C. 177 (1960). Jurisdiction is predicated upon a final determination of a deficiency by the Internal Revenue Service, section 6212(a),[1] and a petition filed by the taxpayer against whom the deficiency is determined, within 90 days of the mailing of the deficiency notice. Secs. 6213 and 6214. Our rules, promulgated under section 7452, provide that "A case shall be brought by and in the name of the person against whom the Commissioner determined the deficiency." Rule 60(a), Tax Court Rules of Practice and Procedure. This person must have capacity to file the petition. Rule 60(c). If a petitioner lacks capacity, this Court has held that it must dismiss the case for lack of jurisdiction. *Condo v. Commissioner*, 69 T.C. 149 (1977); *Patz Trust v. Commissioner*, 69 T.C. 497 (1977); *Dillman Bros. Asphalt Co. v. Commissioner*, 64 T.C. 793 (1975); *Great Falls Bonding Agency, Inc. v. Commissioner*, 63 T.C. 304 (1974).

The capacity of a corporate taxpayer is determined under Rule 60(c), Tax Court Rules of Practice and Procedure, which states that "The capacity of a corporation to engage in such litigation shall be determined by the law under which it was organized." Petitioner asserts that under Oklahoma's Business Corporation Act[2] it lacked the capacity to both institute this proceeding and to enter into a stipulated decision with respondent. This lack of capacity, it contends, renders the stipulated decision void.[3] Unlike previous cases in which prior to final decision this Court's jurisdiction has been challenged on the basis of lack of capacity, here we are asked to vacate a final decision.

In *Brannon's of Shawnee, Inc. v. Commissioner*, 69 T.C. 999 (1978), we held that we have jurisdiction to determine if we have jurisdiction at any time, be it before or after final decision is

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, and in effect in the year in issue, unless otherwise stated.

[2]Okla. Stat. Ann. tit. 18, sec. 1.167(1), (4) (West 1953).

[3]We note that if we sustain petitioner's contentions with respect to its capacity to enter into a stipulated decision, we must dismiss the petition for the same reason. Any consideration of the substantive merits of petitioner's case as well as any consideration of the statute of limitations, raised in petitioner's brief, would be beyond our jurisdiction.

entered. In sum, we have, in keeping with the inherent power of all courts, the power to vacate a void decision.

A void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy; ineffectual to bind parties or support a right; of no legal force and effect whatever, and incapable of confirmation, ratification or enforcement in any manner or to any degree. [7 J. Moore, Federal Practice, par. 60.25[2], p. 300 n. 29 (2d ed. 1978).]

A judgment is void if the Court lacks subject matter jurisdiction or, unless waived, personal jurisdiction over the parties. There are, however, certain quasi-jurisdictional matters which do not necessarily render a final judgment void, but merely erroneous. See, e.g., *Lubben v. Selective Service System Local Board, No. 27*, 453 F. 2d 645 (1st Cir. 1972).

As we have previously noted, lack of capacity has been dealt with by this Court only in a pre-final decision context. Under the Federal Rules of Civil Procedure[4] and the Oklahoma Civil Procedure Law[5] the failure of a defendant to raise the issue of

---

[4]Fed. R. Civ. P. 12 provides in pertinent part:

RULE 12. Defenses and Objections—When and How Presented—by Pleading or Motion—Motion for Judgment on Pleadings.

(a) When Presented. A defendant shall serve his answer within 20 days after the service of the summons and complaint upon him, except when service is made under Rule 4(e) and a different time is prescribed in the order of court under the statute of the United States or in the statute or rule of court of the state.

    *        *        *        *        *        *        *

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

    *        *        *        *        *        *        *

(h) Waiver or Preservation of Certain Defenses.

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

[5]Okla. Stat. Ann. tit. 12, secs. 267, 268(a), and 269 (West 1960) provides in pertinent part:

lack of capacity by either motion or answer during the pendency of the proceeding results in a waiver of the issue. If it is raised, a case in both the Federal system and Oklahoma will be dismissed because of improper party. Thus, it is arguable that lack of capacity is not a jurisdictional defect that would render a decision void and permit us to review it under our inherent power to vacate void decisions.

Nonetheless, it appears that this Court has historically viewed capacity as a major element necessary to invoke its jurisdiction. *Communist Party of the U.S.A. v. Commissioner*, 38 T.C. 862 (1962), revd. 332 F.2d 325 (D.C. Cir. 1964); *Wheeler's Peachtree Pharmacy, Inc. v. Commissioner*, 35 T.C. 177 (1960); *National Committee to Secure Justice in the Rosenberg Case v. Commissioner*, 27 T.C. 837 (1957); *Coca-Cola Bottling Co. v. Commissioner*, 22 B.T.A. 686 (1931); *Consolidated Companies, Inc. v. Commissioner*, 15 B.T.A. 645 (1929). In *S. Hirsch Distilling Co. v. Commisssioner*, 14 B.T.A. 1073, 1078–1079 (1929), we noted that since a corporation had dissolved,

no legal entity remained to institute this proceeding. The attempt on the part of one of its former officers to institute a proceeding in its behalf has resulted in nothing since he could not by his own acts raise the dead * * * . *Our*

---

Sec. 267. Demurrer to petition—-Grounds

The defendant may demur to the petition only when it appears on its face, either:

First. That the court has no jurisdiction of the person of the defendant, or the subject of the action.

Second. That the plaintiff has no legal capacity to sue.

Third. That there is another action pending between the same parties for the same cause.

Fourth. That there is a defect of parties, plaintiff or defendant.

Fifth. That several causes of action are improperly joined.

Sixth. That the petition does not state facts sufficient to constitute a cause of action.

Sec. 268A. Objection to be joined in demurrer or motion—Waiver if not raised

(a) All objections to defects that appear on the face of the petition, whether raised by motion or demurrer, except motions to quash the summons or process or the service thereof and motions to dismiss the action for improper venue, must be raised at the same time, and no waiver results from such objections being joined. Any objection not raised when the defendant demurs or interposes a motion is deemed waived except objections to the jurisdiction of the court or that the petition does not state facts sufficient to constitute a cause of action. If the court sustains any of the defendants objections so that the plaintiff amends or corrects his petition, the defendant may raise further objections by either motion or demurrer or both, but all such objections must be made at the same time.

(b) Motions to quash the summons or process or the service thereof and to dismiss the action for improper venue may be joined with objections to defects that appear on the face of the petition, and such joinder does not constitute a waiver of the objections to jurisdiction or venue.

Sec. 269. Objections taken by answer—Waiver if not taken

When the defects do not appear upon the face of the petition, the objection may be taken by answer; and if no objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action.

*determination of a deficiency under such circumstances would be a nullity, and accordingly, on our own motion, we hold that we have no jurisdiction.* [Emphasis supplied.]

Likewise, in *Hoj v. Commissioner*, 26 T.C. 1074, 1076 (1956), the Court concluded that "the Tax Court would have no jurisdiction to bind the petitioners by any decision which it might enter on the merits." In light of these opinions, and our more recent pronouncements in *Condo v. Commissioner, supra; Dillman Bros. Asphalt Co. v. Commissioner, supra;* and *Great Falls Bonding Agency, Inc. v. Commissioner, supra,* we hold that capacity of the parties is a major jurisdictional element, which, if lacking, will render our decision void. Thus, our power to vacate a final decision on the ground that it is void includes the power to vacate a decision if petitioner lacked capacity.

In our opinion in *Brannon's of Shawnee, Inc. v. Commissioner, supra* at 1004, granting leave to file a motion to vacate, we indicated that resolution of the capacity issue here would turn on the question of whether the deficiency in dispute constituted an existing "claim" or pending "action or proceeding" within the meaning of the pertinent Oklahoma statute.

Petitioner contends that under Oklahoma law, upon the merger of petitioner into the successor, the petitioner lacked capacity to sue or be sued. The Oklahoma Business Corporation statutes, title 18, sec. 1.167(1) and (4) (West 1953) provide in relevant part:

Sec. 1.167 Merger and consolidation: effect of: when such merger or consolidation has been effected

(1) In the case of a merger, the separate existence of all constituent corporations, except the surviving corporation, completely ceases; and, in the event of a consolidation, the separate existence of all constituent corporations fully terminates, and a new corporation, herein designated as the resulting corporation, is brought into existence.

\* \* \* \* \* \* \*

(4) Such surviving or resulting corporation shall thenceforth be subject to and liable for all the liabilities and obligations of each of the constituent corporations so merged or consolidated; and any claim existing, or action or proceeding pending, by or against any of such corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or such surviving or resulting corporation, as the case may be, may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any of such corporations shall be impaired by such merger or consolidation.

Thus, although the separate existence of the petitioner com-

pletely ceases on the date of the merger, the statute provides that litigation may be instituted or continued by or against the merged corporation if an action or proceeding was pending, or a claim existed, on the date of the merger.

Petitioner correctly contends that no action or proceeding was pending at the time of the merger. It is sufficient to note that the circumstances here do not achieve the level necessary to bring the instant case within our holding in *Field v. Commissioner,* 32 T.C. 187 (1959), affd. 286 F.2d 960 (6th Cir. 1960), cert. denied 366 U.S. 949 (1961). In that case, various activities, including the filing of agreements extending the period of limitations, the issuance of 30-day letters, the giving of a waiver of restrictions on collection and assessment, and the submission of an offer in compromise together with the tender of a check in payment were held to constitute a proceeding within the meaning of the applicable provision of Michigan law. Here, although the Internal Revenue Service had instituted audit procedures at least 4 months before the merger, no action similar to that in *Field v. Commissioner, supra,* occurred until after the merger.

Unfortunately for petitioner, the Oklahoma statute also provides that any "claim existing" by or against constituent corporations may be litigated as if no merger occurred. We agree with respondent that such a claim did exist at the date of the merger.

We think that a potential tax deficiency constitutes a "claim existing" for purposes of the Oklahoma statute. Here the Internal Revenue Service had instituted field audit procedures at least 4 months before the merger, and given the circumstances of petitioner's ownership and representation, it is apparent that both petitioner and its successor knew of the potential tax liability. Moreover, the tax years involved had ended over a year prior to the merger, and until the statute of limitations ran on assessment and collection, potential tax liability existed. Although it is true that no final determination of a deficiency had been made prior to the merger, nor had a 30-day letter been issued, we see no conceptual difference between this situation and a contractual situation in which the aggrieved party does not discover the breach until subsequent to the merger. Surely a "claim existed" against the breaching party prior to merger and surely a claim exists here. The same analogy

can be drawn to tort cases as well. Cf. *Cherokee Laboratories, Inc. v. Pierson,* 415 F.2d 85 (10th Cir. 1969); *Sikes v. Moline Consumers' Co.,* 293 Ill. 112, 127 N.E. 342 (1920). A claim in the broad sense exists, at least as to potential tax liability, without regard to whether the respondent has officially claimed it against a taxpayer.

Petitioner argues that "claim existing" must be read to mean "a demand of a right, or of an alleged or supposed right, a calling on another for something due or supposed to be due; an active assertion of right and the demand for its recognition." We think, however, that petitioner's interpretation of the term, for purposes of Oklahoma law, is far too restrictive.[6] A claim, we note, has also been defined as meaning "a right to claim or demand; the right itself, * * * ; a right to lay claim to a specific property which is in another's possession; * * * or a title to anything which another should give or concede, or confer on, the claimant; also the facts giving rise to the demand, which show the right asserted, hence a cause of action, or a chose in action." 14 C.J.S., Claims (1939).

Petitioner has not cited any Oklahoma authority that has interpreted "claim existing" with respect to a merger in such a restrictive light. Moreover, our own research indicates that the few cases applying the Oklahoma provision or a similar provision in other jurisdictions suggest that "claim" has not been defined in terms of requiring a specific demand before merger.[7] See *Cherokee Laboratories, Inc. v. Pierson,* 415 F.2d 85 (10th Cir. 1969); *Lawrence v. Williamson Ford, Inc.,* 13 Ill. App.3d 880,300 N.E.2d 636 (1973); *Board of Education v. Herzog Bldg. Corp.,* 41 Ill. App.2d 44, 190 N.E.2d 152 (1963); *Sikes v. Moline Consumers'*

---

[6]Petitioner also cites *United States v. Lockwood,* 81 F.2d 468, 470 (5th Cir. 1936), and *Werner v. United States,* 86 F.2d 113 (2d Cir. 1936), in support of its view. These cases are inapposite here. Both cases involved claims for disability compensation from the Veterans' Administration for war related injuries. The decisions based their interpretation of "claim" upon a statutory definition specifically enacted for purposes of timely filing a request for compensation benefits.

[7]An analogy can also be drawn to the consideration in transferee liability cases of whether potential tax liabilities constitute liabilities included in determining if the transferor was insolvent at the time of transfer. In *Scott v. Commissioner,* 117 F.2d 36, 38 (8th Cir. 1941), the court held that in "determining the question of insolvency, a liability for taxes, though unknown at the time [of transfer], must be considered." In *Alexander v. Commissioner,* 61 T.C. 278, 293 (1973), we stated that in order for the "Government to qualify as a creditor * * * the taxes for which the insolvent debtor is liable need only have been incurred when the transfer is made, and it is immaterial whether they had been assessed or even discovered at that time." See also *Mysse v. Commissioner,* 57 T.C. 680, 701 (1970); *Coca-Cola Bottling Co. of Tucson, Inc. v. Commissioner,* 37 T.C. 1006 (1962), affd. 334 F.2d 875 (9th Cir. 1964); 9 J. Mertens, Law of Federal Income Taxation, sec. 53.32, p. 49 n. 13 (1977 rev.).

*Co.*, 293 Ill. 112, 127 N.E. 342 (1920). Finally, if we were to accept petitioner's contention that a "claim" may only exist if, at a minimum, a 30-day letter was sent before the merger, the term "claim existing" would become the equivalent of "action or proceeding pending." See *Field v. Commissioner*, 32 T.C. 187 (1959), affd. 286 F.2d 960 (6th Cir. 1960), cert. denied 366 U.S. 949 (1961). We do not think, however, that the disjunctive provisions in the Oklahoma statute are similar in meaning. The Oklahoma statute was enacted in 1947 from an Illinois counterpart in substantially the same language. The Illinois statute had been amended in 1933 to permit "claims existing" in addition to "actions or proceeding pending" to provide a basis for litigation in the name of the merged corporation. This amendment, we think, evinces a legislative effort to expand the number of situations in which a merged corporation may sue or be sued.

Petitioner's reliance on *Paramount Warrior, Inc. v. Commissioner*, T.C. Memo. 1976–400, on appeal (5th Cir., Mar. 28, 1977), is misplaced. *Paramount*, a transferee liability case, involved a merger under the laws of Nevada. At issue was the validity of certain consents extending the statute of limitations executed after the merger in the name of the merged corporation.[8] In holding the consents invalid, this Court grounded its opinion on its finding under Nevada law that the merged corporation had no continued viability for purposes of litigation after the merger because "no action or proceeding" was pending at the time of the merger. No provision in Nevada's merger statutes provided for continued viability, however, on the basis of a "claim existing."

In view of our conclusion that petitioner possessed capacity, under Oklahoma law, to institute this proceeding, we find it unnecessary to reach respondent's contentions with respect to estoppel. We also do not consider respondent's argument that

---

[8]Petitioner has also raised the issue of the validity of the consents extending the statute of limitations. We cannot, however, pass on the merits, if any, to such a defense. In *Paramount*, the transferee suit was the only litigation with respect to the propriety of the deficiency and it was appropriate for the transferee to raise any defenses to the deficiency notice in such proceeding. In the instant proceeding we have jurisdiction solely to determine if our decision is void on the basis of petitioner's capacity to file a petition and enter into a stipulated decision. If we were to vacate the decision and dismiss the petition, we would not be able to reach the statute of limitations issue. However, as no decision on the deficiency will have ever been made, the petitioner's successor would be free to raise such issue in subsequent litigation. If we uphold the decision, the issue of statute of limitations, as a plea in bar, will have been waived by petitioner's stipulation to decision on the merits and will not be available to the successor corporation as a defense in any subsequent litigation.

petitioner's successor has in reality litigated this case from the beginning and thus, under our opinions in *Bond Crown & Cork Co. v. Commissioner*, 19 T.C. 73 (1952); *Alaska Salmon Co. v. Commissioner*, 39 B.T.A. 455 (1939); *Trahern Pump Co. v. Commissioner*, 27 B.T.A. 363 (1932), affd. 71 F.2d 584 (7th Cir. 1934); and *Bowman Hotel Corp. v. Commissioner*, 24 B.T.A. 1193 (1931), appeal dismissed (2d Cir. 1935), has at all times been an appropriate party to bring this case.

Accordingly, the motion to vacate the decision previously entered herein will be denied.

*An appropriate order will be entered.*