### Beardstown Pearl Button Company v. Herman Oswald.

1. CORPORATION—*power of directors to sell property of.* In the absence of express restrictions, the directors of a corporation, as managers thereof, have the power to sell and convey all of its property, without the consent of its stockholders, when it becomes necessary to do so to pay its debts.

2. CORPORATION—*right of, to prefer creditors.* Corporations, like individuals, in the absence of statutory prohibition, may lawfully prefer one creditor to another.

3. CORPORATION—*what essential to consolidation of.* Corporations cannot be consolidated without the sanction of the state and no consolidation will be deemed to have been effected by a transaction between two corporations where none of the steps required by statute has been taken.

Action in *assumpsit.* Appeal from the Circuit Court of Cass county; the Hon. HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1906. Reversed and remanded. Opinion filed November 27, 1906.

A. A. LEEPER, for appellant.

MILLS & McCLURE, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in *assumpsit* by appellee against

appellant, for the recovery of a balance due to appellee upon his salary as secretary and treasurer of the Illinois Pearl Button Company. The declaration consists of the common counts, to which were interposed the pleas of *non assumpsit* and the Statute of Frauds. Upon a trial by jury, the plaintiff recovered a judgment for $186.60, to reverse which the defendant appeals. The following facts were practically uncontroverted: For sometime prior prior to October, 1905, appellee was in the employ of a corporation entitled the Illinois Pearl Button Company (hereinafter designated as the "Illinois Co."), as its secretary and treasurer. When he left its service at about that time, there was due to him for salary the sum of $186.60. At a meeting of the stockholders of said "Illinois Co.," held on December 22, 1905, the minutes of the secretary show that a resolution was adopted which contained the following recital:

"Whereas, said business has proven unsatisfactory and unsuccessful and the liabilities increased so as to make its assets barely possible to meet its indebtedness, therefore, it is resolved that the board of directors proceed to sell the assets and from the proceeds first pay the costs so incurred, then all the liabilities of the Illinois Pearl Button Company, and after paying all debts apportion the balance, if any, among the stockholders."

At the same meeting a number of claims against the corporation were presented, including that of appellee. Shortly thereafter the appellant corporation, the Beardstown Pearl Button Company (hereinafter designated as the "Beardstown Co."), was organized and Messrs. Schmoldt, Rhineberger, Duval, Keil and Fisher was elected directors thereof; the said Schmoldt, Duval and Keil being also directors of the Illinois Co. On February 7, 1906, the board of directors of the Illinois Co. met and adopted a resolution which recited that:

"Whereas, a move has been made to continue the operation of the manufacturing of buttons in the city of Beardstown by the organization of a corporation called the 'Beardstown Pearl Button Company,' and inasmuch as it was the absolute instructions and also financial necessity that the Illinois Pearl Button Company close out its affairs and relieve its liabilities, * * * therefore, resolved that the entire assets, belongings, accounts, its good will and trade or business be, offered to the above 'Beardstown Pearl Button Company' for the indebtedness now outstanding, and which the Illinois Pearl Button Company may be liable for."

At this meeting a statement of the liabilities of the corporation was presented and entered upon the minutes, which statement showed an indebtedness to the First State Bank of $12,500, the payment of which was secured by a deed of trust upon the property of the corporation and by the individual indorsements or guarantee of the directors. It also contained the following item: "Also a number of current accounts that are unpaid for material used by the Illinois Pearl Button Company."

On February 17, 1906, said board met again, for the purpose as shown by the minutes of the meeting, of considering an offer of $14,000 to be made by the "Beardstown Co.," whereby said company was to "assume a lien now existing of $8,000 to be deducted from the $14,000, the deed and bill of sale to be made for consideration of $6,000." Said minutes show that it was voted to accept such offer and also recite that "It is further ordered that the president and secretary were to see that the said indebtedness was duly paid and entirely released—of the First State Bank." On February 19th, said Schmoldt, Duval and Keil, acting as directors of the "Beardstown Co.," met and adopted a resolution to the effect that the assets of the "Illinois Co.," including stock, real estate

and book accounts and good-will, be purchased for the sum of $14,000. On February 21st, the "Illinois Co.," by a warranty deed and bill of sale, conveyed all its assets to appellant, the "Beardstown Co.," for a consideration of $14,000, of which the sum of $13,999.18 was paid by appellant to the First State Bank, in full of its indebtedness thereto, and a trust deed which had been previously given to the bank upon the property, was then released of record. The bill of sale which was executed by Duval as president and Schmoldt as secretary, contained the following recital: "This bill is made and executed by order of the said Illinois Pearl Button Company and its board of directors, duly made and entered upon its records and books." The deed which was executed by the same officers, contained substantially the same recital. It further appears that practically all of the indebtedness of the "Illinois Co." except that due to appellee was thereafter satisfied.

Among the creditors so paid were Schmoldt and Keil, to whom the corporation owed the sums of $200 and $75 respectively. The court over the objections of the defendant admitted evidence tending to show that Schmoldt was soliciting subscriptions to the capital stock of the new company, stated to appellee and others that it was the purpose to pay the debts of the old company, and "to work the thing out so nobody would lose any on the old company." At the close of plaintiff's case the defendant requested the court to peremptorily instruct the jury to return a verdict for the defendant, and upon such motion being overruled, further moved that all evidence of oral promises on the part of any officer of the defendant to pay the plaintiff for the services rendered to the "Illinois Co." be excluded from the jury, which motion was also overruled.

While the claim of appellee as against the "Illinois Co." for services was contested on the trial, the

only question here involved is whether appellant, the "Beardstown Co.," is legally liable therefor.

Appellee bases his alleged right of recovery against appellant upon the following contentions: First, that the evidence disclosed by the record, together with the facts and circumstances surrounding the whole transaction, was abundantly sufficient to justify the jury in inferring that there was an express agreement between the two corporations under which the debts of the "Illinois Co." were to be paid.

In the absence of express restrictions, the directors of a corporation, as managers thereof, have the power to sell and convey all of its property, without the consent of the stockholders when it becomes necessary to do so to pay its debts. Sargent v. Webster, 13 Metc. (Mass.) 497; Buell v. Buckingham, 16 Iowa, 284; Ashhurst's Appeal, 60 Pa. St. 290; Elyton Land Co. v. Dowdell, 113 Ala. 177; Blanc v. Mining Co., 95 Calif. 524; McElroy v. Minnesota Perchon Horse Co., 96 Wis. 317; Purdy's Beach on Corp., sec. 834; 3 Thomp. Corp., sec 3983. The evidence tends to show that the "Illinois Co." was heavily involved; that its plant and other property was encumbered for a large amount; that the business was unprofitable. It further appears that the sum paid for the assets was equal to the full value thereof. We therefore conclude that the sale was necessary and was made in good faith.

The purchase of the "Beardstown Co.," if made in good faith, did not of itself render such corporation liable for the debts of the "Illinois Co.," unless it expressly contracted to pay the same. Bruffett v. R. Co., 25 Ill. 353; School Directors v. Miller, 49 Ill. 494. While it is not essential that the existence of such contract should have been established by direct proof, we do not find sufficient facts and circumstances in evidence to warrant the belief on the part of the jury that

such an agreement in fact existed. Although the stockholders by resolution authorized an offer to be made to sell the assets for an amount sufficient at least to pay the entire indebtedness, there is no evidence that such proposition was accepted. On the contrary, the minutes of the directors' meetings of both corporations show in plain and unambiguous terms that such offer was superseded by one by the directors to sell for $14,000, and that the same was accepted by the "Beardstown Co." It is eminently advisable and proper for the directors of the "Illinois Co." to seek and obtain authority from the stockholders to sell, and upon what terms, before effecting so radical a change in the affairs of the corporation, and one of such vital importance to the stockholders, but as has been said, they were not bound to comply therewith, and in the exercise of their powers as such directors, and in order to pay the debts of the company, had ample authority to sell the property upon such terms as they saw fit, provided they acted in good faith. Under our statute a corporation can act only through its board of directors and officers. Its property is not subject to the control of its members or stockholders. Sellers v. Greer, 172 Ill. 549; Bldg. Co. v. Landay, 219 Ill. 168.

It is further urged that the conduct of the officers of the "Beardstown Co." in accepting the deed and bill of sale for all the assets of the "Illinois Co.," with the recitals therein referred to, coupled with the fact that the directors knew personally that the conveyance was made upon the condition that the debts of the "Illinois Co." were to be paid, together with the further fact that practically all such indebtedness except that due to appellee was paid, estops appellant from now denying that there was such an agreement to pay the debts, and that such was the intention of the parties.

There is nothing in the recitals in the bill of sale and deed in question to the effect that they were executed by order of the company, which is inconsistent with the facts as claimed by appellant. The acts of the board

of directors were those of the corporation, which could only act through its board of directors, upon whom the sole control and management of the business of the company was imposed by law. As has been said, the evidence fails to show that the conveyance was made upon the condition that the debts of the "Illinois Co." were to be paid by appellant. The directors of appellant could therefore have had no knowledge to the contrary.

The fact that in disbursing the proceeds of the sale the directors paid the claims of certain creditors which, unlike that of appellee, were undisputed, does not affect the question. Corporations, like individuals, in the absence of statutory prohibition, may lawfully prefer one creditor to another. 2 Mor. Priv. Corp., section 802.

If the directors of appellant, acting as such, and in their official capacity, had with fraudulent intent and purpose represented to the world that the company intended paying all the indebtedness of the "Illinois Co.," with the intention that such representation should be acted upon, and appellee in reliance thereupon was induced thereby to change his line of conduct to his injury, there would be force in appellee's contention. No such representations, however, are shown to have been made. The belief, understanding or unauthorized express or implied promises of individual directors, made unofficially, would not, even if the other elements of an estoppel *in pais* were present, operate as an estoppel of appellant to deny its liability.

It is also contended that the arrangement between the two corporations amounted in law to a legal consolidation of the same under the statute, and that in such case the liability of appellant is fixed by law. There is no evidence in the record upon which to base such contention. The proof shows conclusively that what was intended and accomplished was not a consolidation but a succession. Corporations cannot be consolidated without the express sanction of the state.

Trust Co. v. R. Co., 157 Ill. 641. Neither of the steps required by the statute to be taken to effect a legal consolidation was taken or attempted. Each corporation was acting under an independent franchise and was a distinct entity. The fact that the two companies were organized for the same purpose and that certain directors of one company were directors in the other, could not operate to effect a legal consolidation.

It is further insisted that appellant being practically the former organization under a new name, organized merely for the purpose of more conveniently conducting the same business, and having taken over the entire assets of the former company, it should be presumed that it was part of the undertaking that the debts of such former company were to be paid by appellant. In view of the fact that the assets of the former company were not merely taken over but were purchased outright by appellant, and an ample consideration paid therefor, no such presumption can be indulged.

We are of opinion that the evidence was insufficient to sustain a liability upon the part of appellant, and that the trial court should have so instructed the jury.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*