*Decision will be entered under Rule 50.*

ROBERT C. WINMILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79036. Promulgated March 31, 1937.

*Thomas M. Wilkins, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

OPINION.

MELLOTT: Petitioner seeks redetermination of a deficiency in income tax for the calendar year 1932 in the amount of $5,508.14. In his income tax return for said year he reported as income and claimed as deductions items as follows:

INCOME

| | |
|---|---|
| Line 8. Interest on Bank Deposits, Notes, Corporation Bonds, etc. (except interest on tax-free covenant bonds) | $29, 876. 34 |
| Line 5. Income from partnerships, Syndicates, Pools, etc. Gude-Winmill & Co., No. 1 Wall Street, New York, New York | 27, 984. 15 |
| Line 8. Loss on Sale of Stocks, Bonds, etc. (From Schedule C) In connection with business | $172, 771. 02 |
| Line 10. Dividends on: (a) Stock of Domestic Corporations subject to taxation under Title I of 1932 Act | $11, 785. 00 |
| Line 12. Deficit in Items 1 to 11 | $103, 125. 53 |

DEDUCTIONS

| | |
|---|---|
| Line 14. Taxes paid (Explain in Schedule F) 10, 860. 86 | |
| Line 18. Other Deductions not Reported above (Explain in Schedule F) Capital loss held over 2 years 22, 560. 05 | |
| Line 19. Total Deductions in Items 13 to 18 | 33, 420. 91 |
| Line 20. Net Loss (Item 12 plus Item 19) | 136, 546. 44 |
| Line 22. Net Deficit for Tax Computation | 136, 546. 44 |

At the hearing before us the following facts were stipulated:

(1) During the calendar year 1932 and for several years prior thereto the petitioner, Robert C. Winmill, was a member of the partnership of Gude, Winmill & Co., with offices at No. 1 Wall Street, New York, New York, which said partnership was engaged in the stock brokerage business.

(2) During 1932 petitioner operated three separate securities trading accounts the entire interest in each of which was his own. During that year he sold 61,992 shares of stock through said three accounts in 419 separate sales transactions representing stock purchases of 61,992 shares made through the said three accounts in 353 separate purchases, the cost of which to the petitioner was $2,884,531.14, exclusive of purchase commissions, which amounted to $8,911.00. Of these commissions $1,417.50 were paid by petitioner in 1931 and $7,493.50 were paid by petitioner in 1932. The said 61,992 shares of stock were sold in 1932 by petitioner for $2,722,904.37. During 1932 petitioner paid brokers commissions on said sales in the amount of $9,574.00. During 1932 petitioner also paid sales taxes on said sales in the amount of $5,072.95.

(3) During 1932 petitioner operated jointly with other persons four securities trading accounts in each of which he had a fractional interest, and which accounts were operated as joint ventures. Each of these accounts was operated at a profit. During that year there were sold 2,525 shares of stock through said four accounts in 22 separate sales transactions representing stock purchases of 2,525 shares made through the said three accounts in 22 separate purchases. Petitioner's share in the cost of the said 2,525 shares of stock was $68,300.00. Petitioner's share of the buying commissions paid by him on said purchases during 1932 amounted to an additional $270.00. The said 2,525 shares

of stock were sold through the said four accounts during 1932 for an amount of which petitioner's share was $71,687.88. Petitioner's share of the selling commissions paid by him during 1932 amounted to $273.75. Petitioner's share of the sales taxes paid by him during 1932 on said sales amounted to $66.83. Petitioner's share of the gains from these said four joint accounts during 1932 amounted to $2,267.80, after payment of all costs and expenses.

(4) None of the shares sold through any of the above described seven accounts was held for two years or more.

(5) On his 1932 return petitioner claimed a loss deduction of $172,771.02, on account of the 419 sales transactions and the 22 sales transactions described in paragraphs (2) and (3), above. In his determination of the deficiency involved, the Commissioner disallowed the deduction so claimed on the petitioner's return, and increased the petitioner's income for the year 1932 by the following amounts:

| | |
|---|---|
| Stock profit joint accounts | $2,247.65 |
| Stock losses | 172,771.02 |
| Total | $175,018.67 |

(6) The taxes above referred to in the amount of $5,072.95 were claimed as a deduction by petitioner in his 1932 return and were allowed by the Commissioner.

(7) At the end of the year 1932 petitioner had on hand in his said three individual trading accounts, shares of stock on which commissions in the amount of $403.00 were paid by him in 1932, which is not included in any of the amounts of commissions hereinabove described and set forth.

(8) No part of the broker's commissions, above referred to, in the amounts of $8,911.00, $9,574.00 and $403.00 have been allowed by the Commissioner as deductions.

(9) Except as to broker's commissions, as shown herein above, the petitioner kept his records and filed his returns, including his records and return for the year 1932, on the cash receipts and disbursements basis.

Petitioner's and respondent's joint exhibit A–1 shows in detail the result of the operations of the seven trading accounts. It discloses a total loss on the sales made through the three individual accounts in the amount of $175,038.82, said amount including commissions but not tax (the taxes having been claimed and allowed as deductions). It shows also the petitioner's share of the net gain from the operations of the four joint stock trading accounts in which he had an interest and which accounts were operated as joint ventures, such distributive share of the net gain being $2,267.80.

In addition to the stipulated facts petitioner testified, and we find as a fact, that he devoted a portion of his time to the operation of the seven trading accounts.

The controversy between the parties is chiefly because the respondent applied section 23 (r) of the Revenue Act of 1932 [1] and disallowed,

---

[1] (r) LIMITATION ON STOCK LOSSES.—

(1) Losses from sales or exchanges of stocks and bonds (as defined in subsection (t) of this section) which are not capital assets (as defined in section 101) shall be allowed only to the extent of the gains from such sales or exchanges (including gains which may be derived by a taxpayer from the retirement of his own obligations).

as a deduction from petitioner's gross income, the losses sustained by him in the several trading accounts. Upon brief, petitioner argues that the section is unconstitutional and void. The pleadings apparently raise no such issue and perhaps it should not be considered. *Frederick N. Dillon*, 20 B. T. A. 690; *Coca-Cola Bottling Co.*, 22 B. T. A. 686. But inasmuch as the section merely places a limitation upon the deduction of losses, we are satisfied that it is constitutional. "Unquestionably, Congress has power to condition, limit, or deny deductions from gross income in order to arrive at the net that it chooses to tax." *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301, 304. *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1, 23, 24. *Helvering* v. *Independent Life Insurance Co.*, 292 U. S. 371–381; *Commissioner* v. *Lafayette Life Insurance Co.*, 67 Fed. (2d) 209; *Lloyd* v. *Commissioner*, 55 Fed. (2d) 842. Any doubt which may have existed as to the constitutionality of the section is completely dispelled by the opinion of the Court of Appeals for the Second Circuit in the recent case of *Davis* v. *United States*, 87 Fed. (2d) 323. Nothing more need be said on this point.

Section 23 (r) being constitutional and valid, may petitioner offset his gains from the partnership of Gude, Winmill & Co. and from the four joint accounts by his losses on the three accounts owned and operated by him individually? We think not.

Section 1111 (a) (3) of the Revenue Act of 1932 defines "partnership" as follows:

(3) The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

It is clear that if petitioner and his associates were not partners in the generally accepted sense of the term, they were nevertheless engaged in a joint venture in conducting the four joint accounts and dividing the profits and losses, and, at least for present purposes, such joint ventures must be considered as partnerships. This brings us, then, to the question decided in *Percy H. Johnston*, 34 B. T. A. 276. It was there held that a partner, entitled as such to a share of the profits of a partnership upon its sale of noncapital assets, could not, in computing his individual taxable income, reduce his share of profits therefrom by the amount of his loss upon the sale of similar assets owned by him individually. Our decision was recently af-

---

(2) Losses disallowed as a deduction by paragraph (1), computed without regard to any losses sustained during the preceding taxable year, shall, to an amount not in excess of the taxpayer's net income for the taxable year, be considered for the purposes of this title as losses sustained in the succeeding taxable year from sales or exchanges of stocks or bonds which are not capital assets.

firmed by the Circuit Court of Appeals for the Second Circuit (*Johnston* v. *Commissioner*, 86 Fed. (2d) 732. The court in its opinion says: "* * * the petitioner must treat his share of the partnership gain as ordinary income in his return since he cannot sustain the claimed right to have it retain there its status as a gain derived from the sale of non-capital assets by bringing it within one of the exceptions to the general rule which Congress has created." This conclusion was reached upon a consideration by the court of the various sections of the revenue act relating to partnerships, which, the court said, disclosed a scheme providing, "in general for the carrying over into his own return of a partner's distributive share of partnership income as computed in the partnership information return as so much ordinary income without noticing its source as shown by the partnership return except in those instances for which especial provision has been made." (*Johnston* v. *Commissioner*, *supra.*) We accordingly hold that the proposed offset can not be made.

The remaining contention of petitioner is that even if section 23 (r) is constitutional and applicable, nevertheless the commissions paid to brokers in connection with the buying and selling of speculative securities are deductible from gross income either as ordinary and necessary business expenses under the provisions of section 23 (a) of the Revenue Act of 1932, or as losses, under the provisions of section 23 (e) of the same act.

All of the revenue acts have allowed, as deductions from gross income, the ordinary and necessary expenses of carrying on a trade or business and losses incurred in trade or business or in transactions entered into for profit; but commissions paid in purchasing and selling speculative securities have never been held to be deductible either as business expenses or as losses. Prior to 1932, the Treasury regulations consistently provided that commissions paid in purchasing securities are a part of the cost price of such securities and commissions paid in selling securities are an offset against the selling price. Art. 108, Regulations 33 (Revised) (1916); art. 293, Regulations 45 (1918); art. 293, Regulations 62 (1921); art. 292, Regulations 65 (1924); art. 292, Regulations 69 (1926); and art. 282, Regulations 74 (1928). This regulation has been upheld by the courts and by this Board in a number of decisions. *E. P. Greenwood*, 34 B. T. A. 1209; *Florence G. Baldwin*, 23 B. T. A. 512; *I. N. Burman*, 23 B. T. A. 639; *Frank Cavanaugh*, 19 B. T. A. 1251; and *Hutton* v. *Commissioner*, 39 Fed. (2d) 459, affirming 12 B. T. A. 265.

In *Hutton* v. *Commissioner*, *supra*, the Circuit Court of Appeals for the Fifth Circuit said:

It is clear that the taxpayer suffers no hardship by the rule, as the commission paid in purchasing the securities may be deducted from the profits or added to the losses when the securities are eventually sold.

The regulation was tacitly approved by the Supreme Court in *Helvering* v. *Union Pacific Railroad Co.*, 293 U. S. 282. In that case the Court, holding that commissions paid by a taxpayer for the sale of its own bonds were not deductible as ordinary and necessary expenses, said:

In this respect the commissions do not differ from brokerage commissions paid upon the purchase or sale of property. The regulations have consistently treated such commissions, not as items of current expense but as additions to the cost of the property or deductions from the proceeds of sale, in arriving at net capital profit or loss for purposes of computing the tax.

Does section 23 (r) require a modification of, or a departure from, the consistent treatment which has always been accorded to brokerage commissions paid upon the purchase or sale of speculative securities? We think not. The section merely places a limitation upon the deductions from gross income which may be taken as "losses from sales or exchanges" of noncapital assets by providing that they "shall be allowed only to the extent of the gains from such sales or exchanges."

Petitioner argues that if Congress had intended to include commissions within such losses, it would have made specific reference to them either in section 23 (r) or in section 23 (t). He refers to the familiar rule enunciated by the Supreme Court in *Gould* v. *Gould*, 245 U. S. 151, and oft applied by this Board, that tax-leving statutes are not to be extended by implication and doubt is to be resolved in favor of the taxpayer. But the rule is not applicable here. Congress did not define "losses" and we must presume that the term was used in the section in question as it had been construed by the courts and by this Board. "Unless the contrary appears, statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them." *DeGanay* v. *Lederer*, 250 U. S. 376.

But, says petitioner, unless the commissions are allowed as ordinary and necessary business expenses or as losses they will never be reflected against taxable income in any year. We do not agree with this contention. The effect of adding the commissions to the cost of the stock purchased in 1932 and offsetting them against the selling price of the stock sold in that year was to increase the amount of the losses for that year. Under the provisions of section 23 (r) (2) losses, disallowed as a deduction by paragraph (1) of the same section, to an amount not in excess of the taxpayer's net income for the taxable year, were to be considered for the purpose of computing his income as losses sustained in the succeeding taxable year from

sales or exchanges of stocks or bonds which were not capital assets. Such losses, under the construction of the Department, approved by the courts and by this Board, included the commissions. It is clear that if petitioner had sufficient gains from the sale of noncapital assets in 1933 to absorb the losses disallowed in 1932, he suffered no hardship by the treatment accorded to the commissions. The mere fact, if it is a fact, that he did not have sufficient gains in 1933 to enable him to so utilize all of the 1932 losses, does not justify overturning or setting aside the rule theretofore consistently followed by the Department for the computation of such losses.

The regulation as amended in 1932 has not been considered by the courts or by this Board. So far as pertinent herein it reads:

Commissions paid in purchasing securities are a part of the cost price of such securities. Commissions paid in selling securities *when such commissions are not an ordinary and necessary business expense*, are an offset against the selling price. [Art. 282, Regulations 77.]

The italicized portion was added in 1932.

Petitioner contends that the regulation as amended authorizes the deduction of the selling commissions from the gross income of a trader in securities as ordinary and necessary expenses of carrying on a trade or business. Having reached this conclusion he takes the next step and contends that if the selling commissions are deductible then no good reason exists for treating otherwise the buying commissions. But did the amendment to the regulations have such a far-reaching effect? We think not. A clue to what was intended by it may be gleaned from a memorandum of the general counsel of the Department issued about the time that it was made. Therein (G. C. M. 15430, XIV-2 C. B. 59) it is stated, in effect, that the Department had undertaken, by the amendment in question, to create an exception to the general rule, which was to be applicable only to dealers in securities. We need not decide whether such exception was valid or not, nor do we pass upon it. But we do decide that the amendment did not have the effect of making the brokerage commissions, paid by a trader in securities, deductible either as ordinary and necessary expenses of carrying on a trade or business or as losses.

It follows that the deficiency determined by the respondent should be, and it is, approved.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH and DISNEY concur only in the result.

---

ARUNDELL, dissenting: I disagree on the last point—the treatment of brokers' commissions. In my opinion the majority report errs in failing to allow the commissions to be deducted as ordinary and necessary expenses.

The facts stipulated abundantly establish that the taxpayer's activities in buying and selling securities amounted to a trade or business. Being engaged in a trade or business, it would seem that his expenses would be deductible under that section of the statute which allows the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Sec. 23 (a). It is difficult to see why commissions, particularly selling commissions, are not ordinary and necessary expenses. They are a part of the cost of selling goods, treated as such generally in business, and are allowed by the Commissioner's regulations to dealers in securities as distinguished from traders in that class of goods without expressed reason for the distinction. The statute makes no such distinction.

Earlier decisions are pointed to as establishing that commissions are not treated as expenses. Under the statutes in force when those decisions were rendered it mattered little what designation was given to them as long as they went into the computation of gain or loss. The practice of treating buying commissions as part of the cost and selling commissions as a reduction of selling price was in the interest of simplification of accounting for gains or losses and was without direct statutory sanction. Now that statutes have been enacted under which the taxpayer, following the former practice, can not deduct a sustained loss, it seems to me that he should be permitted to call his expenditures by their true name—expenses of trade or business—and bring them within the statutory provision directly dealing with such expenditures. It is to be noted that section 23 (r), which is applied by the majority report to this case, does not deal with expenses at all, and, if there is any conflict between it and section 23 (a), then it should give way to the section directly dealing with expenses.

It is not a sound answer to the taxpayer's argument to say to him that possibly he may have the benefit of his expenses in a future year on other sales or exchanges. The taxing statutes have consistently assessed income taxes on the basis of annual accounting periods (*Helvering* v. *Morgan's, Inc.*, 293 U. S. 121) and in order to achieve this end it is necessary to account in each year for the profits or losses on the sale or exchange of all property dealt in within the year. This requires that all profit on the property and all deductions allowed with respect to it be reported as occurring within the year. It is only when the deductions allowed for the year are exhausted that there is resort to the exception of carrying over to a succeeding year. Here, if we follow the plain wording of the statute and allow as expenses what are generally regarded as such, the taxpayer's operations within the year will be accounted for

within that same year and thus meet the primary intent of Congress to levy taxes on an annual basis.

So far I have discussed mainly commissions on sales, for they are to my mind clearly business expenses. Commissions on purchases are a bit more difficult to classify, perhaps because we have fallen into the habit of speaking of them as "capital expenditures." Yet upon analysis they are little if any different from selling expenses. To one engaged in the business of buying and selling they are ordinary and necessary expenses. A merchant employing a buyer on salary would unquestionably deduct the salary as a current business expense rather than allocate it as part of the cost of goods, and in substance a commission paid to a buyer is no different.

LEECH, ARNOLD, and HARRON agree with this dissent.

BLACK agrees with this dissent in so far as it relates to selling commissions.