T.C. Summary Opinion 2012-112

UNITED STATES TAX COURT

SHANNON M. GALVAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6515-12S.                    Filed November 13, 2012.

<u>John P. March</u>, for petitioner.

<u>Gary C. Barton</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

This case is an action for determination of relief from joint and several liability on a joint return commenced by petitioner pursuant to section 6015(e)(1) and Rules 320-325.

On May 3, 2012, respondent filed a Motion To Dismiss For Lack Of Jurisdiction (Motion To Dismiss) on the ground that the petition was not filed within the time prescribed by section 6015(e) or section 7502.  On May 15, 2012, petitioner filed an Objection to respondent's Motion To Dismiss (Objection).  On May 30, 2012, respondent filed a Response to petitioner's Objection.  On August 7, 2012, we issued an Order requiring the parties to supplement their filings with additional information.  We have received the requested supplements and, after careful review of the facts and arguments presented by the parties, we shall grant respondent's Motion To Dismiss, as supplemented.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The facts relevant to the disposition of respondent's Motion To Dismiss are as follows:

Petitioner resided in the State of Oklahoma at the time that the petition was filed with the Court.

On March 1, 2007, petitioner and her then spouse, Irving J. Galvan, signed a joint Federal income tax return for 2005 (tax return) reporting a tax liability of $3,999 with unpaid tax due of $2,698. On March 20, 2007, respondent received the tax return but without any remittance, and the acknowledged tax due remained unpaid.

On May 28, 2007, respondent corrected a math error on the tax return that resulted in adjusted unpaid tax due of $2,787 and assessed the adjusted liability.[2] In addition, a Form 4340, Certification of Assessments, Payments, and Other Specified Matters, indicates that a notice showing the $2,787 balance due (Notice of Balance Due) was mailed to petitioner on May 28, 2007.

---

[2] The math error related to the overall limitation on itemized deductions under sec. 68. The difference between the total tax assessed, $4,186, and the total tax reported on the tax return, $3,999, is $187.

On July 5, 2007, respondent received a Form 8857, Request for Innocent Spouse Relief (first Form 8857), from petitioner.[3]  On the first Form 8857 petitioner requests relief from liability with respect to tax years 2004 and 2005 and indicates that she was not divorced, legally separated, or living apart from Mr. Galvan at that time.[4]

In Letter 3279C, Final Determination, dated March 25, 2008 (Final Determination), and sent by certified mail to petitioner at her last known address, respondent determined that petitioner was not entitled to relief under section 6015 for tax year 2005.[5]

As relevant herein respondent denied petitioner relief under section 6015(c) because he determined that petitioner had actual knowledge "of the income or deductions that caused the additional tax".  In addition, respondent determined

---

[3]  Petitioner dated the first Form 8857 April 15, 2007.

[4]  On her first Form 8857 petitioner indicates that she helped prepare the former couple's 2004 and 2005 tax returns, reviewed the 2005 tax return before signing it, and knew that there was a balance due at the time she signed the 2005 tax return.  On an attachment to her first Form 8857, petitioner states that her husband became addicted to gambling in 2004 and that this addiction caused the couple to file for bankruptcy in 2005.  In addition, petitioner states that "[w]hen we filed our tax return for 2005 * * * I was then aware of his [gambling] winnings at that point."

[5]  Tax year 2004 was addressed in a separate letter and is not in dispute.

that petitioner was ineligible for section 6015(c) relief because she was not divorced, widowed, legally separated, or living apart from Mr. Galvan for the 12 months before filing her first Form 8857.[6]

Also as relevant herein, respondent denied petitioner equitable relief under section 6015(f) because, apart from determining that she had actual knowledge as stated above, petitioner "did not show it would be unfair to hold * * * [her] responsible" for the tax due, failed to prove that at the time she signed the return she "had reason to believe the tax would be paid", and failed to "prove economic hardship."

Furthermore, the Final Determination advised petitioner that "[i]f you disagree with our decision, you can file a petition with the United States Tax Court to review our denial. You must file your petition within 90 days from the date of this letter. If you intend to file a petition, you should write promptly." The Final Determination also advised as follows: "PLEASE NOTE: The law sets the time you are allowed to file your petition; the IRS cannot change the time period."

Petitioner did not file a petition with this Court within the 90-day period.

---

[6] It appears that the only amount that would be subject to allocation under sec. 6015(c) is the $187 resulting from respondent's math error correction. See Karp v. Commissioner, T.C. Memo. 2009-40, slip op. at 4 n.3 ("An 'understatement,' generally equated with a 'deficiency,' is the taxpayer's failure to correctly report on a return the amount of tax due.").

About two years later on March 16, 2010, respondent received a second Form 8857 for tax year 2005 again requesting relief under section 6015. On the second Form 8857, petitioner indicates that she was divorced from her husband on January 5, 2010.[7] An attachment to the second Form 8857 alleges that "[i]t would be inequitable to hold Shannon Galvan responsible for any tax debt for the tax year 2005".

On September 29, 2010, respondent received a third Form 8857 from petitioner for tax year 2005 again requesting relief under section 6015. The third Form 8857 is identical to the second Form 8857.

On July 25, 2011, the Commissioner issued Notice 2011-70, 2011-32 I.R.B. 135, announcing a change in policy under which a requesting spouse would no longer be required to submit a request for equitable relief under section 6015(f) within two years of the Commissioner's first tax collection activity against such

---

[7] We note that on the second Form 8857, petitioner also indicates that she reviewed the tax return before it was signed. Furthermore, petitioner indicates that she used joint accounts with Mr. Galvan and that she made deposits, paid bills, balanced the checkbook, or reviewed the monthly bank statements. In addition petitioner states that, at the time she signed the tax return, she knew that Mr. Galvan had $207,046 of gambling income (which was the amount reported on the return), and she knew that an amount was owed to the IRS. Moreover, petitioner indicates that the former couple was having financial problems when the return was signed. Finally, petitioner indicates that she was not a victim of spousal abuse or domestic violence and did not sign the tax return under duress.

spouse.  Moreover, if an individual's request for equitable relief was previously denied solely for being untimely under the two-year deadline and that request was not litigated, Notice 2011-70, supra, provides a transitional rule allowing such individual to reapply for relief under section 6015(f) by filing a new Form 8857. See Notice 2011-70, supra.

The record includes a fourth Form 8857, signed by petitioner, bearing a date of November 9, 2011, and again requesting relief under section 6015.[8]

On January 5, 2012, the Commissioner issued Notice 2012-8, 2012-4 I.R.B. 309, providing a proposed revenue procedure that, if finalized, would, inter alia, change the requirement of Rev. Proc. 2003-61, sec. 4.01(3), 2003-2 C.B. 296, 297, and section 1.6015-5(b)(1), Income Tax Regs., that a requesting spouse must file a claim for equitable relief no later than two years after the date of the Commissioner's first collection activity.  The new requirement would provide that a requesting spouse must file a claim for equitable relief before the expiration of the period of limitations for collection under section 6502 or the period of limitations for credit or refund under section 6511, if applicable.  See Notice 2012-8, supra.

---

[8] The fourth Form 8857 is virtually identical to the second and third Forms 8857.

On February 1, 2012, respondent mailed petitioner a letter (February 1, 2012 letter) informing her: "We received the additional information you sent us following your receipt of the final determination letter we mailed you. We considered the information and did not change our determination." The February 1, 2012 letter also states: "Your appeal time is expired. Your United States Tax Court petition time is expired. There is no further Innocent Spouse issue."

On March 9, 2012, petitioner filed a petition with this Court. Petitioner alleges in her petition that "[t]he Internal Revenue Service did not follow the procedures or consider the factors for granting equitable relief outlined in Revenue Procedure 2003-61."

## Discussion

The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. See sec. 7442; Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Jurisdiction must be proven affirmatively, and a party invoking our jurisdiction bears the burden of proving that we have jurisdiction over the party's case. See Fehrs v. Commissioner, 65 T.C. 346, 348 (1975); Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 180 (1960); Natal Comm. to Secure Justice v. Commissioner, 27 T.C. 837, 839 (1957). In order to meet this burden, the party must establish affirmatively all facts giving

rise to our jurisdiction.  See Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. at 180; Consol. Cos. v. Commissioner, 15 B.T.A. 645, 651 (1929).

Petitioner frames her request as one for equitable relief under section 6015(f).[9]  Section 6015(e)(1)(A) generally provides us with jurisdiction to determine the appropriate relief available to an individual under section 6015(f) when such individual files a petition (1) within 90 days after the Commissioner mails, by certified or registered mail to such individual's last known address, a notice of the Commissioner's final determination with respect to a claim for equitable relief, or (2) after six months have expired since the individual filed a claim for equitable relief and no final determination has been issued.  See Rule 320(b).

Petitioner does not dispute that she failed to file a petition within the statutory 90-day period after respondent mailed the Final Determination on March 25, 2008.  However, in her Objection petitioner argues that "respondent has incorrectly computed the time the petitioner was eligible to file her petition" under section

---

[9]  In the attachments to petitioner's second, third, and fourth Forms 8857, she alleges that "[i]t would be inequitable to hold * * * [her] responsible for any tax debt for the tax year 2005".  Further, petitioner's sole allegation in her petition to the Court is that respondent "did not follow the procedures or consider the factors for granting equitable relief outlined in Revenue Procedure 2003-61."

6015(e). In support of this assertion, petitioner argues that Notice 2011-70, <u>supra</u>, and Notice 2012-8, <u>supra</u>, operate to treat her first Form 8857 as "facially defective and a nullity". In the supplement to her Objection, petitioner cites section 1.6015-5(b)(5), Income Tax Regs. (dealing with premature requests for relief), and argues, albeit necessarily in the alternative, that her first Form 8857 was "a premature request for relief which the Internal Revenue Service should not have considered and acted on".

Moreover, petitioner suggests that her fourth Form 8857 should be treated as a qualifying request for relief under section 6015(f) and that respondent's February 1, 2012 letter should be treated as a new final administrative determination beginning a new 90-day period within which she was entitled to petition the Tax Court. Under petitioner's theory, she timely filed her petition within this new 90-day period and thus respondent's Motion To Dismiss should be denied. We consider petitioner's arguments in turn below.

The Internal Revenue Code does not expressly address whether the Court has jurisdiction over subsequent requests for relief that are submitted with respect to the same tax year. Pursuant to section 6015(h), however, the Commissioner has promulgated regulations to carry out the provisions of section 6015. Those regulations generally provide that a qualifying election or request for relief under

section 6015 is "the <u>first</u> timely claim for relief from joint and several liability for the tax year for which relief is sought." Sec. 1.6015-1(h)(5), Income Tax Regs. (emphasis added).

The regulations also provide:

A requesting spouse is entitled to <u>only one</u> final administrative determination of relief under § 1.6015-1 [dealing with elections for relief under section 6015(b) and (c), as well as requests for equitable relief under section 6015(f)], for a given assessment unless the requesting spouse properly submits a second request for relief that is described in § 1.6015-1(h)(5). [Sec. 1.6015-5(c)(1), Income Tax Regs., emphasis added.]

Petitioner does not assert that these regulations are invalid. Moreover, petitioner does not contend that her second, third, or fourth Form 8857 constitutes a second request for relief within the meaning of section 1.6015-1(h)(5), Income Tax Regs.[10]

Instead, petitioner asserts that her first timely claim for relief under section 6015 (i.e., her first Form 8857) should be treated as "facially defective and a nullity". Petitioner does not provide any direct authority to support her assertion but

---

[10] Under sec. 1.6015-1(h)(5), Income Tax Regs., a qualifying election may include a second election to allocate a deficiency under sec. 6015(c) where the requesting spouse: (1) Made a first election under sec. 6015(c); (2) did not qualify for 6015(c) relief at that time <u>solely</u> because she failed to satisfy the nonmarital or separate-household requirements of sec. 6015(c)(3); and (3) subsequently satisfies the sec. 6015(c)(3) requirements at the time of her second election to allocate a deficiency under sec. 6015(c).

points us to recent pronouncements made by the Commissioner. Specifically, petitioner suggests that Notice 2011-70, supra, and Notice 2012-8, supra, should be collectively interpreted in such a way as to allow us to ignore her first Form 8857 and treat her fourth Form 8857 as a qualifying request for equitable relief under section 6015(f).

We find nothing in Notice 2011-70, supra, or Notice 2012-8, supra, that would suggest the outcome sought by petitioner. Petitioner appears to misconstrue the recent pronouncements made by the Commissioner regarding the two-year deadline for filing equitable requests for relief under section 6015(f). Contrary to petitioner's theory, those pronouncements do not operate to treat an otherwise qualifying request for relief (i.e., the first timely filed request for relief) as "facially defective and a nullity".[11] See sec. 1.6015-1(h)(5), Income Tax Regs. Accordingly, we reject petitioner's argument that Notice 2011-70, supra, and

---

[11] Moreover, under the transitional rule announced in Notice 2011-70, 2011-32 I.R.B. 135, individuals whose requests for equitable relief were denied solely for untimeliness under the two-year deadline may reapply for relief under sec. 6015(f) by filing a new Form 8857 with the Commissioner. Respondent, however, did not deny petitioner's first request for relief claimed on her first Form 8857 because such request was untimely under the two-year deadline. Rather, petitioner's first request for relief was timely under the two-year deadline, and respondent denied such request only after a determination on the merits.

Notice 2012-8, supra, operate to treat her first Form 8857 as "facially defective and a nullity".

Likewise, we reject petitioner's argument that her first Form 8857 constituted a premature claim and thus should have been ignored by respondent. "A premature claim is a claim for relief that is filed for a tax year prior to the receipt of a notification of an audit or a letter or notice from the IRS indicating that there may be an outstanding liability with regard to that year." Sec. 1.6015-5(b)(5), Income Tax Regs. "A premature claim is not considered an election or request under § 1.6015-1(h)(5)." Id.

On May 28, 2007, respondent assessed the $4,186 tax liability pursuant to section 6213(b)(1).[12] The Form 4340 indicates that respondent mailed petitioner the

_____

[12] Respondent was authorized to make this assessment under sec. 6213(b)(1) as a mathematical or clerical error because it was "'an entry on a return of a deduction * * * in an amount which exceeds a statutory limit imposed by subtitle A [of tit. 26]', which limit 'is expressed * * * as a specified monetary amount', and 'the items entering into the application of such limit appear on such return'". See Perkins v. Commissioner, 129 T.C. 58, 65 n.8 (2007) (citing sec. 6213(g)(2)(E)). With a math error, the Commissioner is authorized to correct the error, make an additional assessment, and send a notice of the correction to the taxpayer. See Heasley v. Commissioner, 45 T.C. 448, 457 (1966); Ciciora v. Commissioner, T.C. Memo. 2003-202. The taxpayer then has 60 days to request an abatement of the assessment. Sec. 6213(b)(2)(A). If the Commissioner receives a timely abatement request, then he must abate the assessment and proceed under normal deficiency procedures. Id. Petitioner does not allege that she filed an abatement request or

(continued...)

Notice of Balance Due that same day informing her of the $2,787 outstanding balance. Petitioner's first Form 8857 was not received by respondent until July 5, 2007. Therefore, petitioner received "a letter or notice from the IRS indicating that there may be an outstanding liability with regard to" tax year 2005 before her first Form 8857 was filed. See sec. 1.6015-5(b)(5), Income Tax Regs.

Moreover, petitioner helped prepare the former couple's tax return, reviewed the return before signing it, and was aware that there was a balance due at the time she signed the return on March 1, 2007. Petitioner signed the first Form 8857 on April 15, 2007, and respondent received the first Form 8857 on July 5, 2007.[13] Therefore, petitioner filed the first Form 8857 after she and Mr. Galvan signed and filed their tax return indicating a balance due. Under these circumstances, petitioner has failed to demonstrate that her first Form 8857 was premature. See Ewing v. Commissioner, 118 T.C. 494, 505-506 (2002) ("In this situation, Congress's concern regarding premature requests for relief is not present"), rev'd on other grounds, 439 F.3d 1009 (9th Cir. 2006).

_____

[12](...continued)
otherwise disagreed with the math error assessment.

[13] Although petitioner signed the Form 8857 on April 15, 2007, there is no evidence to demonstrate that it was filed any time before July 5, 2007, the date it was received by respondent as reflected on the Form 4340. Accordingly, we hold that the first Form 8857 was filed on July 5, 2007.

Thus, petitioner's second, third, and fourth Forms 8857 were not qualifying requests for relief because none of those requests was the "first timely claim for relief from joint and several liability for the tax year for which relief is sought", i.e., tax year 2005. See sec. 1.6015-1(h)(5), Income Tax Regs. (emphasis added). Further, we reject petitioner's suggestion that respondent's February 1, 2012 letter constituted a notice of final determination within the meaning of section 6015(e)(1)(A)(i)(I). A requesting spouse is generally "entitled to only one final administrative determination of relief" for a given assessment, and respondent properly mailed the Final Determination on March 25, 2008. See sec. 1.6015-5(c)(1), Income Tax Regs. Respondent's February 1, 2012 letter did not purport to be a final administrative determination of relief, and we find that respondent did not intend it to be such. See Barnes v. Commissioner, 130 T.C. 248, 254-255 (2008).

We have previously held that "[a]lthough the statute does not expressly address whether an individual may invoke this Court's jurisdiction by resubmitting a previously denied request, we do not believe the 90-day limitations period of section 6015(e)(1)(A) should be defeated or protracted by the simple expedient of filing a succession of duplicative claims." Id. at 253-254. We conclude that petitioner's second, third, and fourth Forms 8857, as well as the attachments thereto, are

duplicative claims "best characterized as seeking reconsideration of" petitioner's first Form 8857. See id. at 253.

## Conclusion

In sum, Notice 2011-70, supra, and Notice 2012-8, supra, do not operate to treat petitioner's timely filed first Form 8857 as "facially defective and a nullity". Petitioner's first Form 8857 was not a premature request for relief within the meaning of section 1.6015-5(b)(5), Income Tax Regs. Petitioner's second, third, and fourth Forms 8857 were not qualifying requests for relief under section 1.6015-1(h)(5), Income Tax Regs. Petitioner was not entitled to a second final administrative determination of relief under section 1.6015-5(c)(1), Income Tax Regs. Respondent's February 1, 2012 letter does not constitute a notice of final determination within the meaning of section 6015(e)(1)(A)(i)(I). Accordingly, because petitioner failed to petition the Court within the 90-day period provided by section 6015(e)(1)(A)(ii), we lack jurisdiction to decide petitioner's case.

To give effect to the foregoing,

> An order granting respondent's Motion To Dismiss, as supplemented, and dismissing this case for lack of jurisdiction will be entered.